J-A01018-17

2017 PA Super 70

| | |
|---|---|
| IN THE INTEREST OF: P.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF P.S., A MINOR | No. 577 WDA 2016 |

Appeal from the Orders of March 28, 2016 and April 11, 2016
In the Court of Common Pleas of Allegheny County
Juvenile Division at No(s): CP-02-JV-000183-2015,
CP-02-JV-0001963-2015, FID 02-FN-034554-2010 and SID 429-53-30-0

BEFORE: BOWES, OLSON and STRASSBURGER,* JJ.

OPINION BY OLSON, J.: **FILED MARCH 17, 2017**

Appellant, P.S., a juvenile, appeals from the order entered on March 28, 2016 adjudicating him delinquent of three offenses[1] without further disposition, as well as a subsequent dispositional order, following the revocation of his probation, entered on April 11, 2016. Upon careful consideration, we affirm Appellant's adjudications for receiving stolen property and fleeing or attempting to elude a police officer, but vacate his adjudication for flight to avoid apprehension. Further, we affirm the dispositional order entered on April 11, 2016.

The trial court summarized the facts of this case as follows:

> Officer Steven Kester[,] a police officer with the North Braddock Police Department[,] stated that on Sunday, January 17, 2016 at approximately [8:10 p.m.], he and a

---

[1] The trial court adjudicated Appellant delinquent of receiving stolen property, 18 Pa.C.S.A. § 3925, flight to avoid apprehension, 18 Pa.C.S.A. § 5126, and fleeing or attempting to elude a police officer, 75 Pa.C.S.A. § 3733.

*Retired Senior Judge assigned to the Superior Court.

fellow officer were on patrol when they came into contact with a Jeep SUV. According to Officer Kester, he ran the license plate number of the Jeep SUV because moments before, he had learned from the East Pittsburgh Police Department that a Jeep SUV had been reported stolen.

Upon confirmation that the license plate on the vehicle matched that of the Jeep SUV that was reported stolen, Officer Kester testified that they activated their lights and siren on the police vehicle and attempted to stop the Jeep SUV. Officer Kester testified that instead of stopping, the Jeep SUV 'took off, went down a couple [of] streets, turned down a back alley along the train tracks, lost control on a dirt road and smashed into a tree.' Officer Kester added that once the vehicle took off, it traveled at a rate above the speed limit for approximately one-half mile before the driver lost control of the Jeep SUV on an icy, dirt road, which caused the vehicle to slide sideways and impact a tree head-on. The collision with the tree then caused the Jeep SUV to be knocked down onto the railroad tracks. Officer Kester testified that when the Jeep SUV crashed, the police car was approximately twenty feet behind the Jeep forcing them to slam on their brakes.

Once the vehicle stopped, Officer Kester was able to determine the number of occupants in the Jeep SUV vehicle because both the headlights of the police vehicle and the 'overhead take down lights' were extremely bright and illuminated the interior of the Jeep SUV. Officer Kester saw three occupants 'bail' out of the Jeep SUV from the passenger side of the vehicle and flee the scene. Officer Kester stated he was pretty sure that the individual behind the steering wheel was wearing a puffy, blue coat. This person was also the last one to exit the vehicle. The other two occupants were wearing black hoodies.

Officer Kester pursued the person wearing the blue jacket. He followed him down a hill, at times tripping and falling. Officer Kester stated that during the foot chase, the person in the blue jacket was never more than twenty to thirty feet ahead of him.

Once they reached Corey Street, Officer Kester stated he began yelling 'Taser' as he was running close behind the

individual. Shortly afterwards, the individual 'put his hands up and turned around.' He then surrendered himself to the officer. This person was later determined to be P.S., [Appellant] in this case.

In court, Officer Kester testified that Appellant was 'wearing basically the same thing' in court that day that he was wearing the night of his arrest: a blue jacket similar to the one hanging from [A]ppellant's chair and a headband he observed [A]ppellant wearing in the hallway. Officer Kester identified [Appellant] as the person who 'was driving the car that night.'

Continuing in his testimony, Officer Kester explained that [A]ppellant told him that he had been at a friend's home earlier that evening, that the friend had called a 'jitney' for him, and that this jitney was the same vehicle in which he was riding when the police pulled up behind them. Appellant also denied knowing the other two passengers in the vehicle.

The Commonwealth called [R.C.[2]] as its second witness. [R.C.] testified that she had been the owner of a green, 2003 Jeep Liberty that was stolen from her residence located in the Regent Square neighborhood of the City of Pittsburgh. While [R.C.] could not remember the exact date her 2003 Jeep was stolen, [R.C.] testified it was taken on a Friday because when she went out on Saturday morning to use the vehicle, her car was missing. The police were called and a report was made. [R.C.] testified that she was notified on Monday or Tuesday by the police that her vehicle had been found abandoned and damaged in North Braddock. She testified that she had not left the keys in her vehicle, that she did not know Appellant and that she had not given him permission to operate or drive her vehicle. The Commonwealth rested its case after the conclusion of the testimony of [R.C.]. Appellant presented no witnesses.

Trial Court Opinion, 7/12/2016, at 5–8 (record citations omitted).

_____

[2] We use the victim's initials to protect her identity.

Procedurally, the case progressed as follows. On January 25, 2016, the Commonwealth filed a delinquency petition against Appellant charging him with the aforementioned charges, as well as possession of a controlled substance,[3] a charge the Commonwealth eventually withdrew. Because Appellant was on probation as the result of a prior adjudication of delinquency for retail theft, the trial court scheduled a joint hearing on February 22, 2016, to address the alleged probation violations and the new offenses. The trial court, however, continued the hearing because the alleged victim was unavailable.

On March 28, 2016, the trial court found Appellant delinquent of the aforementioned charges. The trial court, however, did not impose a disposition on the new adjudications. Instead, it entered an order on March 28, 2016 stating, "[Appellant] is ADJUDICATED DELINQUENT and no further disposition is ordered because [Appellant] is currently under the court's supervision" on his previous adjudication for retail theft. Order, 5/28/2016, at 1. Immediately after the adjudication hearing, the trial court proceeded to a review hearing on the alleged probation violations. The trial court found that Appellant was not meeting the terms and conditions of his probation and that probation was no longer appropriate. Accordingly, the trial court revoked Appellant's probation on the underlying retail theft adjudication and

---

[3]   35 P.S. § 780–113(a)(16).

ordered that Appellant be committed to the Penn Hills Community Intensive Supervision Program (CISP). When the trial court ordered the commitment to CISP, Appellant became agitated. Thus, the trial court continued the dispositional hearing on the probation violation until the following day to reconsider whether CISP was an appropriate placement for Appellant and to explain his post-dispositional rights. On March 29, 2016, the trial court deferred further disposition on the probation violation until April 11, 2016. On April 11, 2016, the trial court entered a probation violation dispositional order, directing placement with the Outside-In Residential Program. On April 22, 2016, Appellant filed a single notice of appeal from the March 28, 2016 order adjudicating him delinquent and imposing no further disposition on the new delinquency adjudications. Appellant's April 22, 2016 notice also appealed from the dispositional order entered on April 11, 2016 for violating the terms of probation following the prior adjudication for retail theft.

Before we turn to the merits of this case, we must address several procedural irregularities. Initially, we note that the trial court recommends in its Rule 1925(a) opinion that "because the [A]ppellant has not filed an appeal as to the April 11, 2016 order entered, that his appeal should be quashed for failing to timely file his appeal." Trial Court Opinion, 7/12/2016, at 4. However, upon review of the record, Appellant filed a single notice of appeal captioned with the docket numbers from both the underlying retail theft adjudication and new adjudications, purporting to appeal "from the March 28, 2016, March 29, 2016, and April 11, 2016 dispositional orders."

- 5 -

Notice of Appeal, 4/22/2016. Thus, we reject the trial court's suggestion that we quash the appeal for failing to file a notice of appeal from the April 11, 2016 order.

We recognize however, that "[w]here [] one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed." Note to Pa.R.A.P. 341, *citing* **Commonwealth v. C.M.K.**, 932 A.2d 111, 113 n.3 (Pa. Super. 2007). In **C.M.K.**, this Court quashed a single appeal from two judgments of sentence imposed on codefendants who were convicted and sentenced individually on different charges. **C.M.K.**, 932 A.2d at 112. We noted that the filing of the joint appeal in that instance was unworkable because the appeals required individualized arguments, separate appellate analyses of the evidence, and distinct examination of the different sentences imposed. **Id.** This case is distinguishable from **C.M.K.**

While our Supreme Court recognized that the practice of appealing multiple orders in a single appeal is discouraged under Pa.R.A.P. 512 (joint appeals), it previously determined that "appellate courts have not generally quashed [such] appeals, provided that the issues involved are nearly identical, no objection to the appeal has been raised, and the period for appeal has expired." **K.H. v. J.R**., 826 A.2d 863, 870 (Pa. 2003) (citation omitted). Here, Appellant presents intertwined issues related to his new

adjudications and revocation disposition, the Commonwealth has not objected,[4] and the appeal period has expired. Hence, we decline to quash the appeals because Appellant filed a single appeal from the two orders at issue.

Finally, we must address whether we have jurisdiction to hear Appellant's appeal as it pertains to the March 28, 2016 order imposing no further disposition on the new delinquency adjudications. More specifically, we must determine whether that order constitutes a final order. Appellant addresses this subject in his first issue presented on appeal, wherein he avers:

1. Should Appellant's appeal be permitted to proceed as is, inasmuch as (A) with respect to his appeal from the delinquency-without-disposition judgment order that was entered in CP-02-JV-0000183-2016, that order was the juvenile equivalent of a judgment of conviction without further punishment in an adult case, and was thus an appealable final order; and, furthermore (B) with respect to his error in taking a single appeal from the March 28, 2016 delinquency-without-disposition judgment order entered in CP-02-JV-0000183-2016 and from the resultant April 11, 2016 probation violation disposition order that was entered (by the same judge) in CP-02-JV-0001963-2015, that error should be excused since it did not deprive this Court of jurisdiction, since the Commonwealth has indicated that it does not object to the taking of a single appeal rather than of two separate appeals, and since the error was *de minimus* given the

---

[4] ***See*** Commonwealth's Brief, at 15 n.7 ("The Commonwealth does not believe that the instant appeal should be defeated simply because of this procedural error on [] [A]ppellant's part but would [] leave the decision to this Court.").

- 7 -

> great likelihood that two separate appeals would have been consolidated into a single appeal anyway given the interrelation of the two cases?

Appellant's Brief at 5.

"In juvenile proceedings, the final [o]rder from which a direct appeal may be taken is the [o]rder of [d]isposition, entered after the juvenile is adjudicated delinquent." **Commonwealth v. S.F.**, 912 A.2d 887, 888–889 (Pa. Super. 2006). "The order of disposition in a juvenile matter is akin to the judgment of sentence in a criminal matter in that both are final orders subject to appeal." **In re M.D.**, 839 A.2d 1116, 1119 (Pa. Super. 2003). Here, there is no dispute that the April 11, 2016 order is a final order.

In this case, however, in its March 28, 2016 order the trial court adjudicated Appellant delinquent of the three new offenses without further disposition. If we were to read the trial court's declarations solely as adjudications, and not a disposition, Appellant's new adjudications would be essentially unreviewable. However, the record reveals that the trial court never intended to impose penalty on those new offenses, recognizing that Appellant was already under the court's supervision and he had violated probation. Thus, the order entered on March 28, 2016, imposing no further penalty on the new adjudications was the disposition of that matter. **Compare Commonwealth v. Rubright**, 414 A.2d 106, 109 (Pa. 1980) (in criminal court, a "determination of guilt without further penalty … constitutes a final, appealable order.")

Based upon the foregoing, we conclude that both orders are properly before us. Here, Appellant's notice of appeal filed on April 22, 2016 specifically raised challenges to two final orders, entered on March 28, 2016 and April 11, 2016, within the 30-day appeal period pursuant to Pa.R.A.P. 903(a). Hence, we may exercise appellate jurisdiction and we decline quashal in this case. Accordingly, we turn now to address the merits of Appellant's appellate claims.

Appellant presents the following, additional issues for our review:

2. Was the Commonwealth's evidence at Appellant's March 28, 2016 adjudicatory hearing insufficient to permit deeming him, a 15-year-old youth, to be a juvenile delinquent on CP-02-JV-0000183-2016 due to his commission of the delinquent act of 18 Pa.C.S.[A.] § 3925[,] [r]eceiving [s]tolen [p]roperty ([a]utomobile) on January 17, 2016 since it failed to prove, beyond a reasonable doubt, three things that it had to prove given the allegations that it made – namely, (A) that the Jeep SUV that Appellant occupied on that date, not further described, was the same green 2003 Jeep Liberty SUV, not further described, that was taken on an unspecified date from outside the residence of the woman that the Commonwealth asserted was 'the victim;' (B) that Appellant drove that Jeep SUV on the evening in question rather than being a mere passenger of that vehicle; and (C) that Appellant knew or suspected that the vehicle that he occupied was a stolen vehicle?

3. Was the Commonwealth's evidence at Appellant's March 28, 2016 adjudicatory hearing also insufficient to permit deeming him to be a juvenile delinquent on CP-02-JV-0000183-2016 due to his commission of the delinquent acts, on January 17, 2016, of 75 Pa.C.S.[A.] § 3733 [f]leeing or [e]luding a police officer and of 18 Pa.C.S.[A.] § 5126 [f]light to [a]void [a]pprehension since it also failed to prove (A) that Appellant drove the Jeep SUV that he occupied, as required by 75 Pa.C.S.[A.] § 3733, and (B)

that he faced, when he fled from the police after the Jeep SUV that he occupied had crashed, a scheduled trial in an adult criminal case or, alternatively, a scheduled sentencing hearing in such a case, as is required by 18 Pa.C.S.[A.] § 5126?

4. Should the decision of the juvenile court below deeming Appellant to have violated his probation on CP-02-JV-0001963-2015 be vacated since it was predicated entirely upon Appellant having committed the delinquent acts referred to in CP-02-JV-0000183-2016?

Appellant's Brief at 5-7.

Appellant's second and third claims challenge the sufficiency of the evidence to support his adjudications and revocation of his probation. When examining a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, this Court employs a well-settled standard of review:

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth. In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.
>
> The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the

hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth. The finder of fact is free to believe some, all, or none of the evidence presented.

*In Interest of J.G.*, 145 A.3d 1179, 1188 (Pa. Super. 2016) (internal citations omitted).

In his second issue presented, Appellant argues that the Commonwealth failed to produce sufficient evidence to support his adjudication for receiving stolen property in three respects:

first, that the Jeep SUV that he occupied on January 17, 2016 was the same Jeep Liberty SUV that was owned by the putative victim; second, that he drove or otherwise controlled that car on January 17, 2016; and third, that he knew or suspected that it was a stolen car.

Appellant's Brief at 31. More specifically, with regard to the first allegation, Appellant claims that, "instead of proving that Appellant had [R.C.'s] car, all the Commonwealth showed was that he occupied **a** car and that her [car] had been stolen. **It never connected the two cars**." *Id.* at 36 (emphasis in original). Appellant argues that the victim did not provide identifying information including her license plate or vehicle identification number, characteristics of the vehicle, or a precise date she reported the car stolen or the police recovered it. *Id.* at 36-28. Appellant claims Officer Kester's testimony that he learned that the car was stolen from a dispatch over the police radio was limited on hearsay grounds and could not be used as substantive, corroborative evidence that the car Appellant was riding in was, in fact, stolen. *Id.* at 38 n.23. Appellant next claims the Commonwealth

failed to prove he controlled the automobile because Officer Kester equivocated and offered a vague description of Appellant in the driver's seat and then speculated that Appellant was the driver because he was the last occupant to exit the passenger side of the vehicle due to damage to vehicle. *Id.* at 42-50. Appellant further claims that there was no evidence that he had cause to know that the car had been stolen (because there was no damage to the steering column or ignition), he believed he was riding in a jitney, and his flight should not be evaluated as indicia of guilt of receiving stolen property. *Id.* at 51-56.

Our legislature has defined receiving stolen property as follows:

> **(a) Offense defined.**--A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.
>
> **(b) Definition.**--As used in this section the word "receiving" means acquiring possession, control or title, or lending on the security of the property.

18 Pa.C.S.A. § 3925.

"Based upon this definition, this Court has identified the elements of the crime [] to be: (1) intentionally acquiring possession of the movable property of another; (2) with knowledge or belief that it was probably stolen; and (3) the intent to deprive permanently." *Commonwealth v. Robinson*, 128 A.3d 261, 265 (Pa. Super. 2015) (citation omitted). A fact-finder may infer guilty knowledge that property was stolen based upon

the recency of the theft, the place or manner of possession, alterations to the property indicative of theft, the defendant's conduct or statements at the time of arrest (including attempts to flee apprehension), a false explanation for the possession, the location of the theft in comparison to where the defendant gained possession, the value of the property compared to the price paid for it, or any other evidence connecting the defendant to the crime. *Id.* at 268 (citations omitted).

Here, the trial court found the Commonwealth's witnesses credible. Trial Court Opinion, 7/12/2016, at 9. We will not usurp that determination. While the victim could not remember her license plate number or the exact date she contacted police, she confirmed that she had reported her car stolen. *Id.* Officer Kester testified that he "confirm[ed] that the license plate on the Jeep matched the license plate on the car reported stolen." *Id.* When police activated their overhead lights and sirens, the vehicle sped off. *Id.* at 11. Officer Kester recognized Appellant as the driver based upon his "blue puffy jacket" which Appellant also wore to court as identified by Officer Kester. *Id.* at 9-10 and n.4. Moreover, the trial court found "[t]he fact that the person wearing the blue jacket (later identified a[s] Appellant) was the last to exit the car [on the passenger side of the vehicle] was significant in establishing the identity of the driver" because "it would take the driver more time to exit on the passenger side, because the front passenger [had] to exit first and the driver [had] to climb over the console." *Id.* Appellant

fled, a foot chase ensued, and police eventually apprehended Appellant. **_Id._** at 10.

We conclude that the Commonwealth introduced sufficient evidence to support Appellant's adjudication for receiving stolen property. The vehicle was reported stolen, police confirmed it, and Appellant was in possession of it. While Appellant claims he believed he was in a jitney, the trial court was free to infer that was a false explanation for the possession, because Appellant was in fact driving. Moreover, Appellant fled from police twice, initially in the vehicle during the traffic stop and then later on foot when the car crashed. Based upon all evidence, Appellant was in possession of a stolen car and the trial court properly inferred Appellant's guilty knowledge. Accordingly, we affirm Appellant's adjudication for receiving stolen property.

In his third issue presented, Appellant contends that the Commonwealth failed to prove sufficiently his adjudications for fleeing or eluding police and flight to avoid apprehension. Pertaining to fleeing or eluding police, Appellant reiterates his argument that the Commonwealth failed to prove that he was driving.[5] Appellant's Brief at 60. Regarding

---

[5] "Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop" commits the offense of fleeing or attempting to elude police officer. 75 Pa.C.S.A. § 3733. Appellant only challenges his role as the driver. Having already determined that there was sufficient evidence to support the determination that Appellant was driving, we need not address this claim
*(Footnote Continued Next Page)*

- 14 -

flight to avoid apprehension, Appellant argues that 18 Pa.C.S.A. § 5126 criminalizes the conduct of individuals who flee to avoid standing trial, after they have already been charged, or to avoid sentencing after conviction and that neither of those conditions were present herein. *Id.* at 61-63.

Section 5126, flight to avoid apprehension provides, as follows:

> **(a) Offense defined.--**A person who willfully conceals himself or moves or travels within or outside this Commonwealth with the intent to avoid apprehension, trial or punishment commits a felony of the third degree when the crime which he has been charged with or has been convicted of is a felony and commits a misdemeanor of the second degree when the crime which he has been charged with or has been convicted of is a misdemeanor.

18 Pa.C.S.A. § 5126(a).

Recognizing that criminal statutes are strictly construed and analyzing the plain language of the statute, this Court has previously determined that Section 5126 "requires that a person has been charged with a crime" at the time he or she flees from law enforcement. *Commonwealth v. Phillips*, 129 A.3d 513, 518 (Pa. Super. 2015) ("Since the flight to avoid apprehension statute is plain on its face, and the Commonwealth did not prove that Appellant had been charged with a crime when he fled, insufficient evidence existed to find him guilty of the aforementioned offense.").

*(Footnote Continued)* —————————

further. Accordingly, we affirm Appellant's adjudication for fleeing and eluding police.

Here, at the time Appellant fled he was on the juvenile equivalency of probation. However, he had not been charged with a crime nor adjudicated delinquent and awaiting sentencing. The plain language of the statute says nothing about fleeing to avoid apprehension for potential probation violations. Hence, there was insufficient evidence to support Appellant's adjudication of delinquency for flight to avoid apprehension and we vacate that adjudication. Because Appellant received no penalty on that disposition, however, we need not remand this case for resentencing. **See Commonwealth v. Thur**, 906 A.2d 552, 569 (Pa. Super. 2006) ("if our decision does not alter the overall [sentencing] scheme, there is no need for a remand.").

Finally, Appellant argues that if we vacated his adjudications for receiving stolen property, fleeing or attempting to elude a police officer, and flight to avoid apprehension, then "the probation violation order and the dispositional order of commitment that followed should be vacated[.]" Appellant's Brief at 65.

"The Juvenile Act expressly provides that placement of a juvenile on probation subjects the juvenile to ongoing court supervision and conditions." **In Interest of M.M.**, 690 A.2d 175, 177 (Pa. 1997), *citing* 42 Pa.C.S.A. § 6352(a)(2) (providing for placement of a delinquent child on probation under court supervision, subject to conditions). The Juvenile Act grants broad discretion to the trial court in entering a dispositional order that finds a juvenile in violation of his probation; this Court will not disturb such a

disposition absent a manifest abuse of discretion. *See In re D.S.*, 37 A.3d 1202, 1203 (Pa. Super. 2011) (internal case citations and quotations omitted). Here, upon the finding of new delinquent acts, the trial court "found that [Appellant] was not meeting the terms of his supervision of probation and that his prior disposition of probation was no longer appropriate and revoked probation." Trial Court Opinion, 7/12/2016, at 13.

We discern no abuse of discretion. As discussed above, there was sufficient evidence to support Appellant's new adjudications for receiving stolen property and fleeing or attempting to elude police. Having been found delinquent of new offenses, we agree that probation was no longer effective and revocation was warranted. Hence, we affirm the dispositional order entered on April 11, 2016.

Adjudications for receiving stolen property and fleeing or attempting to elude police affirmed. Adjudication for flight to avoid apprehension vacated. Dispositional order entered on April 11, 2016 affirmed in its entirety. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/17/2017