J-S18028-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOSE ANTONIO SANTIAGO | |
| Appellant | No. 1459 EDA 2016 |

Appeal from the Judgment of Sentence dated April 4, 2016
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0001744-2015
CP-39-CR-0001949-2015
CP-39-CR-0002374-2009
CP-39-CR-0002522-2009

BEFORE: PANELLA, J., SOLANO, J., and FITZGERALD, J.[*]

MEMORANDUM BY SOLANO, J.:                    **FILED JUNE 29, 2017**

Appellant Jose Antonio Santiago appeals from the judgments of sentence imposed by the Court of Common Pleas of Lehigh County after he pleaded guilty to homicide by vehicle while driving under the influence of alcohol (DUI), aggravated assault by vehicle while DUI, and DUI – high rate of alcohol[1] at Docket No. CP-39-CR-0001744-2015, and two counts of delivery of a controlled substance[2] at Docket No. CP-39-CR-0001949-2015. Appellant also appeals from the judgments of sentence imposed after his

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. §§ 3735(a), 3735.1(a), and 3802(b).

[2] 35 P.S. § 780-113(a)(30).

probation was revoked (as a result of the above charges) in two prior cases, Docket Nos. CP-39-CR-0002374-2009 and CP-39-CR-0002522-2009. We affirm.

**Factual Background**

The following summary is based on the facts provided by the Commonwealth and admitted by Appellant when he pleaded guilty.

*The Charges at Docket No. 1744-2015*

At approximately 8:57 p.m. on March 15, 2015, Trooper Eileen Sodano of the Pennsylvania State Police in Bethlehem responded to the area of 1791 Airport Road for a hit and run crash involving two pedestrians. When Trooper Sodano arrived, one pedestrian, Anna Lewis, was deceased. Ms. Lewis' body had been severed in two locations: just above the knees and at mid-torso. The other pedestrian, Rosalie Carlo, was injured and was taken to the hospital. Ms. Carlo had severely injured her right wrist, and, as a result, lost the ability to use her right arm. The striking vehicle was not at the scene of the crash. Police began to canvas the area. N.T., 1/25/16, at 8-9.

At approximately 10:24 p.m., Trooper Chad Burray found a silver 2003 Saab 9-5 parked in front of 1812 Cloverdale Road in Bethlehem. The Saab, which was unoccupied, was registered to Appellant and had front end damage. Specifically, the right front bumper light array was damaged, the front emblem was missing, and the right side windshield had collapsed.

Body parts — which ultimately were determined to be from Ms. Lewis' body — were found inside the car. N.T., 1/25/16, at 9-10.

About two hours later, at approximately 12:30 a.m. on March 16, Appellant approached Trooper Robert Griffin at a location near where the car was found. Appellant identified himself and asked if there had been a crash on Airport Road. Appellant said he had heard about the accident on a local television station and said that he did not hit anyone. He also said he had been coming from an establishment called "Stooges," where he had consumed a few alcoholic beverages. Trooper Griffin noticed body matter on Appellant's right leg and detained him. N.T., 1/25/16, at 10.

Trooper Michael Everk was called to the scene and arrived at 12:50 a.m. He gave *Miranda*[3] warnings to Appellant and asked him about the crash. During that conversation, both Trooper Everk and Trooper Griffin smelled alcohol on Appellant's person and breath. Appellant was taken into custody, and keys to the Saab were found in his jacket pocket. N.T., 1/25/16, at 10-11.

After the troopers obtained a warrant, Appellant's blood was drawn at 4:17 a.m. on March 16. Appellant's blood alcohol concentration more than seven hours after the collision was 0.11, and his blood tested positive for marijuana. N.T., 1/25/16, at 11.

_____

[3] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

On March 17, 2015, Lindsey Perkins, who lived at 1812 Cloverdale Road, went to the police barracks and reported that she had been dating Appellant. She said that at approximately 8:00 p.m. on the night of the crash, Appellant called her to say he was coming to her house. He sounded drunk on the phone and Ms. Perkins told him not to come. Appellant arrived at Ms. Perkins' house anyway, and when he did so, he was "demolished." He could barely stand up, and he stumbled into her house and passed out on the couch. When the police were canvassing the area where the Saab was found, they knocked on Ms. Perkins' door. She did not answer because she was afraid, but she kicked Appellant out of her house. That was several minutes before Appellant approached Trooper Griffin. While Appellant was at Ms. Perkins house, he did not drink anything. Based on having seen drunk people before, Ms. Perkins opined that Appellant was intoxicated and incapable of safe driving. N.T., 1/25/16, at 11-13.

An external camera at an emergency center in the area of the crash captured the incident. The video shows Ms. Lewis and Ms. Carlo walking on the shoulder of Airport Road. A number of vehicles passed them without incident. A silver vehicle then hit both women. Based on the video, an accident reconstructionist opined that Appellant's car was traveling at a speed of 66 miles per hour just before impact. At the time of impact or shortly thereafter, Appellant's car was traveling at approximately 72 miles

per hour. A tire track mark showed that Appellant's car drove onto the gravel shoulder of the road. N.T., 1/25/16, at 13-15.

Blood on Appellant's jacket and pant leg was tested and determined to contain Ms. Lewis' DNA. N.T., 1/25/16, at 15.

An autopsy showed that the cause of Ms. Lewis' death was being hit by Appellant's car. The accident reconstructionist and the coroner opined that in order to cause traumatic amputation, a body must be struck by a vehicle going at least 66 miles per hour. N.T., 1/25/16, at 15.

### *The Charges at Docket No. 1949-2015*

These cases involved two drug sales to an undercover drug task force agent. On December 16, 2014, Appellant sold the agent approximately one ounce of marijuana for $330. On January 5, 2015, Appellant sold the agent approximately one ounce of marijuana for $320. N.T., 1/25/16, at 16-17.

### **Procedural History**

On May 21, 2015, pursuant to Pa.R.Crim.P. 582, the Commonwealth provided written notice of its intent to try Appellant for the offenses charged at Nos. 1744-2015 and 1949-2015 in a single joint trial. Appellant did not object to the joinder. On January 25, 2016, Appellant pleaded guilty to the charges on both dockets. The plea agreement provided that the sentences for the drug charges at No. 1949-2015 would be in the standard sentencing guidelines range and would run concurrently with each other. There was no agreement with regard to the sentences for the charges at No. 1744-2015.

N.T., 1/25/16, at 2-3. At the plea hearing, Appellant acknowledged that his guilty pleas would result in violations of his probation at Nos. 2522-2009 and 2374-2009. *Id.* at 7, 20-21.[4] The parties agreed to schedule the sentencing for the new charges and the probation violation hearing on the same date. *Id.*

On April 4, 2016, the trial court held a probation violation and sentencing hearing. Appellant admitted that he violated his probation at Nos. 2374-2009 and 2522-2009. N.T., 4/4/16, at 3. The probation officer recommended a 1-2 year sentence of incarceration for each violation, to be served consecutively. The pre-sentence investigation report recommended that the terms for the two violations be served concurrently; however, the probation officer noted that the last time Appellant violated his probation, the sentences for the two cases ran consecutively. *Id.* at 4-5.

Before imposing its sentence, the trial court stated that it had reviewed the pre-sentence report, as well as letters submitted by both Appellant and the Commonwealth. At the hearing, Anna Lewis' granddaughter and Appellant gave statements. Trooper Sodano stated that she would never forget the gruesome scene from the crash. Counsel for Appellant and the Commonwealth presented argument. At the conclusion of the hearing, the court sentenced Appellant to the following terms of

---

[4] In both 2374-2009 and 2522-2009, Appellant was on probation for theft by unlawful taking. These two cases were consolidated on July 30, 2009.

incarceration at No. 1744-2009: 5-10 years for homicide by vehicle while DUI; 5-10 years for aggravated assault by vehicle while DUI; and 3-6 months for DUI. The terms for homicide and aggravated assault were consecutive to each other; the term for DUI merged. On No. 1949-2015, in accordance with the plea agreement, the court imposed terms of 1-2 years' incarceration for each drug offense, concurrent with each other. In addition, the court imposed a sentence of 1-2 years' incarceration for each probation violation, consecutive to each other. The sentences for each docket were consecutive. Thus, the aggregate sentence was 13 to 26 years' incarceration.

The court explained its sentences to Appellant as follows:

You have 15 juvenile arrests, nine prior adult arrests, 11 probations were granted with six of them being revoked.

You have been in the system since you were a kid and, clearly, the system that you abused and didn't comply with is now going to take care of your failures.

I note from the PSI that when the troopers came to get you, and your girlfriend woke you up, and you had on you, on your pants, the blood of Anna Lewis, you were arrogant. You were not cooperative. You demanded that a search warrant be obtained for your blood, which is your right. But you were certainly not cooperative. You also had weed in your system.

I found your explanation of driving and suddenly feeling wind from the broken windshield to be ridiculous.[5]

---

[5] This explanation is not in the record.

- 7 -

I'm sorry. You cut her in half and drove home with her body parts in your car and went up to bed. So I hope you think of it every day.

\* \* \*

There is nothing but the maximum that will do for you. You've earned every day of it with your priors, with your lack of consideration for anyone.

This was the ripping away of another human being from the love that she shared with her family. The most brutal ripping away.

She didn't just pass away because she was ill. She didn't just drop dead one day of a heart attack. You took her. Because all you wanted to do was sling your drugs and get wasted.

So your children, where were you when you were supposed to be being a father? You were wasted, dealing drugs and killing people and almost killing two people.

Troopers see really awful things every day and for a trooper to come in here and say she'll never forget it and it was the most gruesome scene.

How could you walk down there and tell the police you didn't kill anyone? "I didn't hurt anyone. I didn't kill anyone," with her head in your car, covered in her blood.

I believe . . . that there was a mistake made by the author of the pre-sentence report as to the concurrent or consecutive nature of those charges. Following a previous violation they were run consecutively and will remain so.

N.T., 4/4/16, at 26-28.

On April 14, 2016, Appellant filed a post-sentence motion for reconsideration of his sentences on 1744-2015, 1949-2015, 2374-2009, and 2522-2009. That motion stated in pertinent part:

8. [Appellant] believes that [the trial court] abused its discretion when it ordered [his] sentences to run consecutively to each other.

9. [Appellant] believes that [the trial court] abused its discretion when it imposed a sentence of incarceration for the probation violation cases.

10. [Appellant] believes that [the trial court] should run all sentences challenged here concurrently with each other.

11. [Appellant] believes that the imposition of consecutive sentences is unduly harsh and punitive and fails to reasonably consider the rehabilitative needs of [Appellant].

Post-Sentence Mot., 4/14/16, at ¶¶ 8-11.

On April 15, 2016, the trial court issued an order denying Appellant's post-sentence motion. On May 10, 2016, Appellant filed a notice of appeal.[6] On May 31, 2016, Appellant filed a Pa.R.A.P. 1925(b) statement of matters complained of on appeal, in which he stated the following claims:

_____

[6] Appellant filed a single notice of appeal for all four judgments of sentence. While Nos. 2374-2009 and 2522-2009 were consolidated, and Nos. 1744-2015 and 1949-2015 were consolidated, it does not appear that all four cases were formally consolidated with each other. Generally, "[w]here . . . one or more order resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed." Note to Pa.R.A.P. 341. However, this Court recently declined to quash an appeal where the juvenile appellant "present[ed] intertwined issues related to his new adjudications and revocation disposition, the Commonwealth [did] not object[], and the appeal period ha[d] expired." *In re P.S.*, 158 A.3d 643, 648 (Pa. Super. 2017). Similarly, here Appellant presents a single issue related to the judgments of sentence for his new convictions and for his probation violations, the Commonwealth does not object to Appellant having filed a single notice of appeal, and the appeal period has expired. Therefore, we will not quash Appellant's appeal on the ground that he filed only one notice of appeal, instead of two.

1. The [c]ourt erred by denying [Appellant's] Post-Sentence Motion requesting reduction or modification of sentence and, specifically, to grant him concurrent sentences.

2. The [c]ourt erred by sentencing [Appellant] to multiple consecutive sentences which created an aggregate sentence of such a length as to be completely disproportionate to the actions of [Appellant].

Appellant's Rule 1925(b) statement, 5/31/16.

In this appeal, Appellant raises the following issue, as stated in his brief:

Whether the lower court abused its discretion in imposing manifestly excessive and unreasonable sentences the most serious of which were at the statutory maximum limit and all were imposed consecutively when the court failed to consider any significant mitigating factors, failed to apply and review the necessary factors as set forth in 42 Pa.C.S.A. § 9721(b) and 42 Pa.C.S.A. § 9781(c) and (d) or otherwise failed to set forth appropriate reasons for its decision that the maximum sentences were the only appropriate sentences?

Appellant's Brief at 8 (excess capitalization removed).

## Jurisdiction

Before we reach the merits of Appellant's claim, we must decide whether we may and should exercise our jurisdiction under Section 9781(b) of the Judicial Code, which provides that this Court has discretion to allow an appeal of the discretionary aspects of a sentence only if the appeal presents a substantial question as to the sentence's propriety. *See* 42 Pa.C.S. § 9781(b). With respect to Section 9781(b), we have explained:

A challenge to the discretionary aspects of a sentence is not appealable as of right. Therefore, before we may exercise jurisdiction to reach the merits of Appellant's claim, we must

- 10 -

verify that Appellant's appeal is properly before this Court—that is, that his appeal was timely filed and that the issues he seeks to raise were properly preserved. If so, we must then determine whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence pursuant to Appellate Rule 2119(f), and whether that concise statement raises a substantial question that the sentence is appropriate under the sentencing code. Only if the appeal satisfies these requirements may we proceed to decide the substantive merits of Appellant's claim.

***Commonwealth v. Luketic***, \_\_\_ A.3d \_\_\_\_, 2017 WL 2123441 at * 8 (Pa. Super. May 16, 2017) (footnote omitted) (brackets, quotation marks, and citations omitted).

We note that Appellant has included a concise statement of the reasons relied upon for allowance of an appeal in his brief. ***See*** Appellant's Brief at 12. We discuss the remaining requirements in more depth below.

*Timeliness of the Appeal*

The Commonwealth argues that this Court lacks jurisdiction with regard to Nos. 2374-2009, and 2522-2009, the appeals from the violations of probation (VOP) sentences, because Appellant did not file a timely notice of appeal. ***See*** Commonwealth's Brief at 10-11.[7]

This Court has explained:

Like most other appeals, an appeal from a sentence imposed after revocation of intermediate punishment must be filed within 30 days after imposition of the new sentence. ***See*** Pa. R. App. P. 903(a). In contrast to other sentencing situations in which the filing of a post-sentence motion extends the appeal period

---

[7] The Commonwealth does not dispute that Appellant filed a timely notice of appeal for Nos. 1744-2015 and 1949-2015.

until after the motion has been decided, ***see*** Pa. R. Crim. P. 720(a)(2), the filing of a motion to modify a sentence imposed after revocation of parole or intermediate punishment does not toll the 30-day appeal period. Pa. R. Crim. P. 708(E).

***Commonwealth v. Flowers***, 149 A.3d 867, 871 (Pa. Super. 2016) (footnote omitted). Here, Appellant was sentenced on April 4, 2016. He filed a post-sentence motion on April 14, 2016, and the court denied that motion on April 15, 2016. Appellant appealed on May 10, 2016, which was within 30 days of the order denying his post-sentence motion, but more than 30 days after entry of the April 4, 2016 order imposing Appellant's sentence. Accordingly, Appellant's appeal was untimely with regard to Nos. 2374-2009 and 2522-2009.

However, it appears that Appellant's appeal was untimely because the trial court provided him with incorrect information about the appeal deadline. The court gave Appellant one notice of his post-sentence rights, which pertained to all four dockets at issue in this appeal. The notice did not explain that a post-sentence motion would toll the time for filing an appeal in Nos. 1744-2015 and 1949-2015, but not in Nos. 2374-2009 and 2522-2009. Instead, the notice stated: "If you file a post-sentence motion, and wish to appeal from the order deciding or denying the motion, a notice of appeal must be filed with the Clerk of Courts–Criminal for Lehigh County, within 30

days of *that order*." Important Post-Sentence Information, 4/4/16, at ¶ 6 (emphasis added).[8]

This Court has declined to quash untimely appeals where the lateness resulted from the trial court's misstatement of the appeal period. *See Flowers*, 149 A.3d at 872 (citing *Commonwealth v. Parlante*, 823 A.2d 927, 929 (Pa. Super. 2003)). In *Parlante*, when the trial court sentenced Parlante for violations of probation, it told her she had 30 days to file a post-sentence motion, and if that motion was denied, she would have 30 days from then to file an appeal. 823 A.2d at 929. Parlante filed her notice of appeal within 30 days of the denial of her post-sentence motion, but not within 30 days of her judgment of sentence. *Id.* Despite the untimeliness of Parlante's appeal, this Court declined to quash her appeal "because Parlante's error resulted from the trial court's misstatement of the appeal period, which operated as a breakdown in the court's operation." *Id.* (internal quotation marks and citation omitted); *accord*, *Flowers*, 149 A.3d at 871-72.[9]

---

[8] In its order denying Appellant's post-sentence motion, the trial court did not provide any additional information regarding the appeal deadline.

[9] In *Flowers*, the defendant filed an appeal within thirty days of the denial of his post sentence motion, but more than thirty days after the court imposed a sentence following a violation of probation. 149 A.3d at 871. Although the appeal was untimely, we declined to quash it because Flowers' lateness was caused by the trial court's failure to provide him with correct information regarding the appeal deadline. *Id.* at 871-72.

Here, as in **Parlante** and **Flowers**, Appellant's lateness in filing an appeal from the judgments of sentence at Nos. 2374-2009 and 2522-2009 resulted from the trial court's misstatement of the appeal period. Therefore, we will not quash his appeal as untimely. **See Parlante**, 823 A.2d at 929.

*Preservation of Issue*

In order to preserve a discretionary sentencing issue, a defendant must raise the issue in (1) a post-sentence motion or during the sentencing proceedings; (2) an Appellate Rule 1925(b) statement; and (3) an Appellate Rule 2119(f) statement. **Commonwealth v. Cartrette**, 83 A.3d 1030, 1042 (Pa. Super. 2013) (*en banc*). Failure to properly preserve a discretionary sentencing issue will result in waiver. **Id.** at 1043.

The claims raised in Appellant's post-sentence motion, Rule 1925(b) statement, and Rule 2119(f) statement differ. In his post-sentence motion, Appellant claimed, "the imposition of consecutive sentences is unduly harsh and punitive and fails to reasonably consider the rehabilitative needs of [Appellant]." Post-Sentence Mot. ¶ 11.[10] In his Pa.R.A.P. 1925(b)

---

[10] Appellant did not raise the present issues during the sentencing proceedings. In his post-sentence motion, Appellant also claimed that the trial court abused its discretion in imposing a sentence of incarceration for the probation violations. Post-Sentence Mot. ¶ 9. However, Appellant does not repeat that claim in his Statement of Questions Presented or in his Rule 2119(f) statement of the reasons relied upon for allowance of an appeal. **See** Appellant's Brief at 8, 12. That additional issue therefore is waived. "[W]e cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question

*(Footnote Continued Next Page)*

- 14 -

statement, he claimed that the imposition of consecutive sentences "created an aggregate sentence of such a length as to be completely disproportionate to" his actions. Appellant's Rule 1925(b) statement, 5/31/17, at ¶ 2. Appellant's Rule 2119(f) statement says:

> [Appellant] is requesting the review of his sentences based upon his belief that the [t]rial [c]ourt abused its discretion when it imposed a harsh and excessive sentence contrary to the fundamental norms of the Sentencing Guidelines. He believes that the [c]ourt failed to set forth legally or factually supported reasons for the imposition of maximum sentences for all DUI related offenses which were all statutory maximum sentences and which the [c]ourt stated were the only possible sentences it could impose. He believes that the [c]ourt ignored legitimate mitigating factors in contravention of its duty and as required pursuant to the sentencing[11]

Appellant's Brief at 12. The only claim that Appellant has consistently raised, and thus properly preserved, is that the imposition of consecutive sentences resulted in an excessive aggregate. We will consider only that portion of Appellant's claim that he properly preserved. **See Cartrette**, 83 A.3d at 1042-43.

<u>Substantial Question</u>

The trial court concluded, and the Commonwealth argues, that Appellant's claim that the imposition of consecutive sentences resulted in an

---

*(Footnote Continued)*

exists." **Commonwealth v. Provenzano**, 50 A.3d 148, 154 (Pa. Super. 2012).

[11] Appellant does not complete this sentence. We presume that he intended to refer to the Sentencing Code.

excessive aggregate sentence fails to raise a substantial question. ***See*** Trial Ct. Op., 4/15/16, at 3; Commonwealth's Brief at 11-13. We agree.

A claim that a sentence is excessive does not necessarily raise a substantial question. ***Commonwealth v. Dodge***, 77 A.3d 1263, 1270 (Pa. Super. 2013) (***Dodge III***), ***appeal denied***, 91 A.3d 161 (Pa. 2014). However, a claim that an aggregate sentence resulting from the imposition of consecutive sentences is excessive raises a substantial question if the "decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case." ***Id.*** at 1273 (citations omitted).

In ***Dodge III***, this Court held that the defendant raised a substantial question when he claimed his aggregate sentence was excessive based on the non-violent crimes he committed. 77 A.3d at 1271-73. Dodge was sentenced to 40 years and 7 months to 81 years and 2 months of incarceration after being convicted of forty counts of receiving stolen property, two counts of burglary, two counts of criminal trespass, and one count each of possession of a small amount of marijuana, possession of drug paraphernalia, and unauthorized use of a motor vehicle. ***Id.*** at 1266-67. We cautioned that although Dodge had raised a substantial question in his particular case, a defendant does not raise a substantial question "where the facts of the case [being reviewed] do not warrant the conclusion that there

is a plausible argument that the sentence is *prima facie* excessive based on the criminal conduct involved." ***Id.*** at 1271.

Instantly, Appellant killed one woman and permanently injured another. He left them on the road while he drove away with part of Ms. Lewis' body in his car. With Ms. Lewis' blood still on his clothing, he told police he had not been involved in an accident. There is no plausible argument that his aggregate sentence of 13-26 years' incarceration was *prima facie* excessive based on the nature of his conduct. ***See Dodge III***, 77 A.3d at 1271.

Because Appellant's appeal does not present a substantial question that the trial court abused its discretion in imposing Appellant's sentence, his appeal is not within our discretionary jurisdiction under Section 9781(b) of the Judicial Code.

**Merits**

Even if Appellant had raised a substantial question, his claim would be meritless. We apply the following standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In order to establish that the sentencing court abused its discretion, the defendant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Luketic***, \_\_\_\_ A.3d at \_\_\_\_, 2017 WL 2123441 at * 11 (brackets, quotation marks, and citations omitted).

- 17 -

The Sentencing Code, 42 Pa.C.S. § 9721(b), provides that a court should impose a sentence of confinement that is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." ***See Commonwealth. v. Walls***, 926 A.2d 957, 962 (Pa. 2007). Here, the trial court explained that its sentence was based on the brutal and gruesome nature of the crimes, as well as Appellant's long criminal record, including multiple violations of probation; failure to cooperate with police investigating the crime; initial denial of any involvement; and incredible explanation of the collision. ***See*** N.T., 4/4/16, at 26-28. We discern no abuse of discretion or error of law in the sentence imposed by the trial court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/29/2017