J-S70024-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
:
WAYNE MICHAEL GLASS :
:
Appellant : No. 763 MDA 2017

Appeal from the Judgments of Sentence May 1, 2017, and May 4, 2017,
In the Court of Common Pleas of Adams County Criminal Division at No(s):
CP-01-CR-0000103-2014,
CP-01-CR-0000543-2014, CP-01-CR-0000639-2016,
CP-01-MD-0000980-2015, CP-01-MD-0001151-2014

BEFORE:  GANTMAN, P.J., SHOGAN, J., and OTT, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED FEBRUARY 05, 2018**

Wayne Michael Glass, ("Appellant"), appeals from the judgments of

sentence entered at trial court docket number CP-01-CR-0000639-2016 on

May 1, 2017 and trial court docket numbers CP-01-CR-0000103-2014, CP-

01-CR-0000543-2014, CP-01-MD-0000980-2015, and CP-01-MD-0001151-

2014 on May 4, 2017.  We affirm.

Following a bench trial, Appellant was convicted of terroristic threats,

stalking, and harassment at docket number CP-01-CR-0000639-201.[1]  On

May 1, 2017, the trial court sentenced Appellant to a term of incarceration of

---

[1] 18 Pa.C.S. § 2706, 18 Pa.C.S. § 2709.1(a)(2), 18 Pa.C.S. § 2709(a)(3),
respectively.

eighteen to sixty months on the stalking conviction and six to sixty months on the terroristic threat conviction, to run concurrently with one another but consecutive to other sentences Appellant was serving.[2]

Following Appellant's convictions and sentence at docket number CP-01-CR-0000639-2016, the trial court revoked Appellant's probation at docket numbers CP-01-CR-0000103-2014, CP-01-CR-0000543-2014, CP-01-MD-0000980-2015, and CP-01-MD-0001151-2014 and sentenced Appellant to incarceration for an aggregate term of fifty-four to one hundred thirty-two months. Appellant filed a single notice of appeal on May 18, 2017, wherein he listed all of the above docket numbers.

Before we address the merits of Appellant's appeal, we must dispose of this Court's June 7, 2017 order directing Appellant to show cause why his appeal should not be quashed for failure to comply with Pa.R.A.P. 341, note. That note states, "Where, however, one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed." In response to our order, Appellant filed a motion for leave to consolidate the appeals and argued that his appeal should not be quashed because the only issues presented for appeal stem from docket number CP-01-CR-0000639-2016, which contains the most recent convictions for harassment, stalking, and terroristic threats.

_____

[2] The trial court did not impose a sentence on the summary harassment charge.

Preliminarily, we note that the filing of one notice of appeal from orders entered at different docket numbers "has long been discouraged." 20 G. Ronald Darlington, et al., Pennsylvania Appellate Practice § 341:3.1.02 (Dec. 2017 Update) (footnote omitted). *See also Commonwealth v. C.M.K.*, 932 A.2d 111 (Pa. Super. 2007) (quashing appeal taken by single notice of appeal filed by codefendendants, who were convicted of different crimes and given different sentences). Despite this policy, which is codified in the note to Pa.R.A.P. 341, our courts have not automatically quashed such an appeal. Indeed, our Supreme Court has stated the following:

> Taking one appeal from several judgments is not acceptable practice and is discouraged. It has been held that a single appeal is incapable of bringing on for review more than one final order, judgment or decree. When circumstances have permitted, however, we have refrained from quashing the whole appeal, but this Court has quashed such appeals where no meaningful choice could be made.

*General Electric Credit Corp. v. Aetna Casualty & Surety Co.*, 263 A.2d 448, 452–453 (Pa. 1970).

Although the filing of one notice of appeal from multiple docket numbers is discouraged, we note that "appellate courts have not generally quashed such appeals, provided the issues involved are nearly identical, no objection to the appeal has been raised, and the period for the appeal has expired." *In Interest of P.S.*, 158 A.3d 643, 648 (Pa. Super. 2017). In *P.S.*, this Court declined to quash a single appeal from two orders, one which adjudicated the appellant delinquent of three crimes and a subsequent

- 3 -

dispositional order, following the revocation of his probation. *Id*. at 645. This Court looked to the fact that the appellant "presents intertwined issues related to his new adjudications and revocation disposition," as well as the facts that the Commonwealth did not object and the appeal period had expired. *Id*. at 648.

In this case, we note that Appellant is appealing the judgment of sentence entered at docket number CP-01-CR-0000639-2016. The four other appeals are relevant to our adjudication of the instant case only because the sentencing court revoked Appellant's probation at those dockets numbers following his convictions of harassment, stalking, and terroristic threats at docket number CP-01-CR-0000639-2016. Indeed, this is not a situation where this Court must address factually distinct convictions or sentences handed down to one or more appellants. Further, we note that the Commonwealth has not objected, and the time for appeal has passed. Our examination of the above facts and relevant case law compels the conclusion that circumstances allow us to exercise our discretion and permit the appeals.[3]

_____

[3] In Appellant's response to our June 7, 2017 *per curiam* order, he filed a motion for leave to consolidate. Pursuant to Pa.R.A.P. 513, this Court may order consolidation where "the same question is involved in two or more appeals in different cases." Appellant's appeal is based entirely on the adjudication of one of the docket numbers, CP-01-CR-0000639-2016, from which he has appealed and we **GRANT** Appellant's motion to consolidate
*(Footnote Continued Next Page)*

Turning to the merits of the appeal, a review of the facts of this case makes it clear that Appellant has a long and protracted criminal history involving the victim, his former paramour, Ms. Glass. Indeed, Appellant has at least twelve prior convictions involving Ms. Glass and has been subject to numerous revocations in the past due to contacts with and threats against Ms. Glass in violation of the order she obtained pursuant to the Protection From Abuse Act ("PFA"), 23 Pa.C.S. § 6101 *et seq.* Order, 5/17/17, at 1.

This case involves a letter Appellant sent to two employees of South Central Community Action Programs ("SCCAP"), a homeless shelter which had provided Appellant services in the past. The letter, written by Appellant, was addressed to Zelona Wagner and Sharon Bechtel, both employees at SCCAP. The letter was several pages long and included the following passage:

> I do know if [Ms. Glass] keeps me in here again like she did the last time because she said she doesn't feel comfortable with me getting out. I will max out and then when I get out there is NO place on this God's green earth she can hide that I will not hunt her down like a blood hound and show her what true "Emotional Distress" is all about. BLOW both her knee caps off and put her in a wheel chair for the rest of her life, that should do it. Death would be way to [sic] easy for her…

N.T., 1/17/17, Exhibit A.

---

*(Footnote Continued)* ————————————

docket numbers CP-01-CR-0000103-2014, CP-01-CR-0000543-2014, CP-01-MD-0000980-2015, and CP-01-MD-0001151-2014 with this appeal.

During the nonjury trial, one of the women to whom the letter was addressed, Zelona Wagner, testified that she became familiar with Appellant when he stayed at the homeless shelter and that their families were friends. N.T., 1/17/17, at 8. After opening the letter and reading the above passage, she immediately gave it to her supervisor, Sharon Bechtel. *Id*. at 11. Ms. Wagner testified she was concerned that had she not informed her supervisor and Appellant made good on his threats, she would "have that on my mind forever." *Id*. Ms. Wagner did not personally know Ms. Glass, although she was familiar with her and Appellant's tumultuous relationship and was aware that Appellant was "obsessed" with Ms. Glass. *Id*. at 12, 17.

Sharon Bechtel testified that she was "quite disturbed" upon reading the letter. *Id*. at 22. She further testified that she had known Appellant for seven or eight years and that her ex-husband and Appellant worked together approximately six years prior. *Id*. at 19, 24. Ms. Bechtel also testified that she became acquainted with Ms. Glass during that period, spoke with her "quite frequently" over the telephone, and that Appellant and Ms. Glass had gone on a double date with Ms. Bechtel and her husband. *Id*. at 24. They later fell out of contact and Ms. Bechtel had not spoken with Ms. Glass since 2012, except for a single occasion when Ms. Glass, who works as a mail carrier, delivered mail to Ms. Bechtel's home. *Id*. at 25. Ms. Becthel further testified that after she read the threats contained in Appellant's letter, she informed a victim witness assistance program and a

detective about the letter to determine how she should proceed. *Id*. at 22. Ms. Bechtel ultimately told Ms. Glass about Appellant's threats when Ms. Glass called the shelter seeking services for one of her children. *Id*. at 23.

Appellant also testified and admitted that he wrote the letter containing the threats to Ms. Glass. *Id*. at 36–37. He stated that he wrote the letter to Ms. Wagner and Ms. Becthel to inform them how "frustrated he was with [Ms. Glass] for not cooperating." *Id*. at 41. He further testified:

> I was hearing rumors of different things [Ms. Glass] is saying and I'm very frustrated, and I just wanted to show how frustrated I was. I sought parole [in] 2015. I got a negative recommendation. I got a nine month hit. May 3rd it will be five years I've been down for PFA violations and I was frustrated and I wanted to show them how frustrated I was. [Ms. Glass] is saying about her emotional distress. Well, I have emotional distress also.

*Id*. at 35–36. Following a nonjury trial, the trial court found Appellant guilty of harassment, stalking, and terroristic threats, as discussed *supra*.

In support of his appeal, Appellant raises the following questions for our review:

> 1. Whether there was sufficient evidence presented by the Commonwealth to convict Appellant of Terroristic Threats?
>
> 2. Whether there was sufficient evidence presented by the Commonwealth to convict Appellant of Stalking?

Appellant's Brief at 6 (issues numbered for clarity).

A claim challenging the sufficiency of the evidence is a question of law, requiring a plenary scope of review. *Commonwealth v. Haughwout*, 837

A.2d 480, 484 (Pa. Super. 2003). We employ the following standard of review:

> The standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom is sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element beyond a reasonable doubt by means of wholly circumstantial evidence.
>
> The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record. Therefore, we will not disturb the verdict unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances

**Commonwealth v. Wanner**, 158 A.3d 714, 717–718 (Pa. Super. 2017) (quoting **Commonwealth v. Vogelsong**, 90 A.3d 717, 719 (Pa. Super. 2014)).

In support of his first issue, Appellant argues that there was insufficient evidence to convict him of terroristic threats because he did not have the required intent to terrorize the victim.[4] In order for a defendant to

---

[4] Appellant has relied on a number of this Court's unpublished memoranda in his brief. This practice is expressly prohibited by Superior Court Operating Procedure § 65.37(A), which states, "An unpublished memorandum decision shall not be relied upon by a Court or a party in any other action or proceeding, except such that a memorandum decision may be relied upon or cited (1) when it is relevant under the doctrine of the law of the case, res
*(Footnote Continued Next Page)*

be convicted of 18 Pa.C.S. § 2706, terroristic threats, "the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for risk of causing terror." *Commonwealth v. Beasley*, 138 A.3d 39, 46 (Pa. Super. 2016) (quoting *Commonwealth v. Tizer*, 684 A.2d 597, 600 (1996)). Neither the ability to carry out the threat or the victim's belief in the same is an element of the offense. *Beasley*, 138 A.3d at 46. As Appellant asserts, the purpose of section 2706 "is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience. It is not intended by this section to penalize mere spur-of-the-moment threats which result from anger." Appellant's Brief at 11 (citing 18 Pa.C.S. § 2706, cmt.).

In support of his appeal, Appellant avers that he lacked the required intent to terrorize Ms. Glass because there was no active relationship between Ms. Glass and the third parties to whom he communicated the threat and Appellant did not make any statements that the threat should be relayed to the victim. Appellant's Brief at 11. Although Appellant concedes that a threat was made, he argues that his intent was not to terrorize Ms.

*(Footnote Continued)* ————————————

judicata, or collateral estoppel, and (2) when the memorandum is relevant to a criminal action or proceeding because it recites issues raised and reasons for a decision affecting the same defendant in a prior action or proceeding." The exceptions do not apply here, and we will disregard those citations in the instant case.

Glass. Appellant's Brief at 12. Instead, Appellant asserts that, looking at the totality of the circumstances, he lacked the intent to terrorize the victim because of the relationship among the parties. *Id*. at 13. Specifically, Appellant argues that he was friends with both Ms. Wagner and Ms. Bechtel and his intent was to relay the message to them; he believed that neither person would relay the message to Ms. Glass "because of their lack of a relationship to her." *Id*. at 13.

The Commonwealth responds that Appellant has a long and protracted history of contacting and threatening Ms. Glass in letters he sent directly to her or other individuals, despite the fact that Ms. Glass obtained a PFA against him. Commonwealth's Brief at 7. Indeed, Appellant sent letters to his mother, his children, his grandchildren, the mother of Ms. Glass, a close friend of Ms. Glass, and Ms. Glass's employer. *Id*. He also had a male acquaintance leave Ms. Glass a voicemail message. *Id*. After each attempt to circumvent the no-contact provision of the PFA, Appellant was convicted of indirect criminal contempt and warned by the trial court. *Id*. at 8. The Commonwealth further avers that Appellant's contact with Ms. Bechtel (who is an acquaintance of Ms. Glass) and Ms. Wagner is simply another attempt by Appellant to communicate his feelings to her, specifically his message that he will hurt her if she opposes his parole. *Id*.

The trial court ultimately found that Appellant's intent to terrorize Ms. Glass could be inferred from the contents of the letter as well as the fact

that Appellant testified that he wrote the letter after he heard "rumors of different things [Ms. Glass] is saying and I'm very frustrated, and I just wanted to show how frustrated I was…." *Id*. (citing N.T. 1/23/17, at 35–36). In its opinion, the trial court noted:

> A state of mind by its very nature is subjective; a person's mind cannot be opened so that his or her intent can be observed. In the absence of a declaration disclosing a person's intent, therefore, one can only look to the conduct and circumstances surrounding it to determine the mental state which occasioned it.

Trial Court Opinion, 6/16/17, at 15 (quoting *Commonwealth v. Crawford*, 24 A.3d 396, 405 (Pa. Super. 2011)). The trial court also found that Appellant acted in reckless disregard for the risk of causing terror because Appellant was aware that Ms. Bechtel and Ms. Glass knew each other, and therefore, he was aware of the possibility that the threat would be relayed to Ms. Glass. Trial Court Opinion, 6/16/17, at 18.

Given Appellant's long and convoluted history with Ms. Glass, the content of the letter, the relationship between the parties, and Appellant's testimony, we conclude that the evidence, when viewed in the light most favorable to the Commonwealth, was sufficient to find Appellant guilty of making terroristic threats.

In his second issue, Appellant complains that the evidence was not sufficient to sustain his conviction for stalking. Appellant's Brief at 17. Pursuant to 18 Pa.C.S. § 2709.1(a)(2), a person is guilty of stalking when the person "engages in a course of conduct or repeatedly communicates to

another person under circumstances which demonstrate or communicate either an intent to place such a person in reasonable fear of bodily injury or cause substantial emotional distress to such other person."

We note that Appellant's supporting argument consists of approximately half a page of text and incorporates the arguments he made regarding his conviction for terroristic threats. Appellant's Brief at 17. Specifically, Appellant asserts that there was no intent to communicate the threat to Ms. Glass; thus, the evidence was not sufficient to find him guilty of terroristic threats and stalking. *Id*. Appellant acknowledges that the letter he sent to Ms. Bechtel and Ms. Wagner form the basis of both the stalking and the terroristic threats convictions. *Id*. Appellant further admits that "there was sufficient previous conduct that if the threat was a terroristic threat then it would also qualify as stalking." *Id*.

The trial court, after reviewing all of the stipulations and evidence, found that

> the prior history between Appellant and the victim, his numerous criminal convictions and PFA violations involving this same victim, as well as the content of the current letter, all establish a course of conduct which evidenced Appellant's intent to cause the victim substantial emotional distress or place her in reasonable fear of bodily injury.

Trial Court Opinion, 6/16/17, at 15 (footnote omitted). We agree with the trial court's assessment and find that the evidence was sufficient to sustain Appellant's conviction for stalking.

Judgments of sentence affirmed.

- 12 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>02/05/2018</u>