J. S34037/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: S.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.P. AND B.M., MOTHER AND FATHER | : | No. 552 MDA 2020 |
| | : | |

Appeal from the Decree Entered February 20, 2020,
in the Court of Common Pleas of Tioga County
Orphans' Court Division at No. 7 OC 2020

| | | |
|---|---|---|
| IN THE INT. OF: K.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.P. AND B.M., MOTHER AND FATHER | : | No. 553 MDA 2020 |
| | : | |

Appeal from the Decree Entered February 20, 2020,
in the Court of Common Pleas of Tioga County
Orphans' Court Division at No. 8 OC 2020

| | | |
|---|---|---|
| IN THE INTEREST OF: B.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.P. AND B.M., MOTHER AND FATHER | : | No. 554 MDA 2020 |
| | : | |

Appeal from the Decree Entered February 20, 2020,
in the Court of Common Pleas of Tioga County
Orphans' Court Division at No. 9 OC 2020

BEFORE: PANELLA, P.J., BENDER, P.J.E. AND FORD ELLIOTT, P.J.E.

J. S34037/20

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED SEPTEMBER 16, 2020**

In this consolidated appeal, K.P. ("Mother") and B.M. ("Father") (collectively, "appellants") appeal from the February 20, 2020 decrees granting the petitions of the Tioga County Department of Human Services ("DHS") to involuntarily terminate their parental rights to their three minor children, S.M. (born June 2015), K.M. (born June 2015),[1] and B.M. (born June 2016) (collectively, "Children"), pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), and (b).  After careful review, we affirm.

The juvenile court summarized the relevant facts and procedural history of this case as follows:

> [Appellants] in this action are the natural parents of [Children].  [DHS] has had legal and physical custody of [Children], constantly since June 26[], 2019, pursuant to Court Order.  [DHS] was initially granted care, after [Children] w[ere] found in the custody of [appellants], who had been found passed out in a motor vehicle, aside a road in Westfield Township, Tioga County.   [Children] w[ere] subsequently adjudicated dependent after a full Adjudicatory Hearing.  [DHS] was directed to provide services intended to support [appellants'] efforts to address their substance use disorder, lack of parenting skills, and other concerns.  This case was reviewed at regular intervals by the [juvenile c]ourt in the companion Dependency action, filed to Number[s 37] DP of 2019 [and 38 DP of 2019], the proceedings of which have been incorporated into the record of this proceeding.
>
> [Children were adjudicated dependent on July 9, 2019.]

---

[1] S.M. and K.M. are twins.

- 2 -

During the course of the Dependency Proceeding, [Father] made no progress towards alleviating the circumstances, leading to the placement of [Children] and was found to be in minimal compliance with the Family Service Plan. [Mother] initially made efforts to address her substance use disorder, through her attendance at an in-patient rehabilitation facility, but after her departure from post-placement housing, [Mother] took no further steps to address her substance use disorder and immediately relapsed. Throughout the dependency of the Dependency Action, [DHD] offered services, specifically visitation, Effective Safe Parenting, and Intensive Case Management. The Effective Safe Parenting Program is a program offered by [DHS], which is intended to support the participants in dealing with substance use disorder, in an effort to allow them to become effective and safe parents. The program requires regular substance use testing, as well as regular meetings with service providers. The purpose of the meetings with the service provider are not simply to conduct substance use testing, but rather are intended to allow the participant to build a safe, stable recovery network, as well as permitting them to address parenting issues and other known concerns. The record in this case indicates that while [appellants] have periodically submitted to requested substance use tests, they have refused numerous efforts and requests by the Human Service Provider to address underlying concerns related to parenting and treatment. The record further reveals that both [Mother and Father] have failed to obtain recommended Substance Use Assessments, despite numerous requests to do so.

The testimony presented in this proceeding indicates that between early January to early February, the Service Provider, Clara Holley, attempted on 17 occasions, either by phone or in person to meet with [appellants], with success being limited to 1 occasion, during a review of the Family Service Plan.

Regarding visitation, [DHS] has, pursuant to Court Order, afforded both [Mother and Father] numerous

opportunities to participate in visitation and has supported efforts to permit visitation on the Court Order scheduled by providing, at least on one occasion, gas cards, and on multiple occasions, throughout the life of this case, [DHS-]funded taxi service, to and from visitation. The record produced at the hearing established that [appellants] have participated in approximately one-half of the scheduled visitations. Regarding other services, [appellants] have failed to regularly meet with or communicate with the cas[ew]orker in this case. [Children] are currently placed with foster parents in Bradford County, Pennsylvania. [Children] have remained together, in this home, since approximately July of 2019. In the current placement, [Children's] medical needs are attended to by the foster parents. The Court notes that despite [Children's] medical care remaining in the Westfield area, within miles of [appellants'] residence, [appellants] have failed to attend any medical or dental appointments after July of 2019.

Juvenile court opinion (No. 552 MDA 2020; No. 7 OC 2020), 2/20/20 at 2-4; *see also* juvenile court opinion (No. 553 MDA 2020; No. 8 OC 2020), 2/20/20 at 2-4, and juvenile court opinion (No. 554 MDA 2020; No. 9 OC 2020), 2/20/20 at 2-4.

On January 24, 2020, DHS filed petitions to involuntarily terminate appellants' parental rights to Children. The juvenile court conducted a termination hearing on February 18, 2020; appellants were not present for this hearing but participated via telephone. Following the hearing, the juvenile court entered separate decrees for each appellant at each docket number, involuntarily terminating their respective parental rights to Children pursuant to Sections 2511(a)(1), (2), (5), and (b). On March 12, 2020, appellants

- 4 -

jointly filed a timely notice of appeal at each docket number, in compliance with **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), and its progeny. Thereafter, appellants jointly filed concise statements of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(a)(2)(i), at each docket number. On April 17, 2020, the juvenile court entered orders indicating that it was relying on its findings of fact and opinions it authored in support of its decrees terminating appellants' parental rights. This court **sua sponte** consolidated appellants' appeals by **per curiam** order on April 20, 2020.

That same day, this court issued a rule to show cause order directing appellants to explain why their notice of appeal from two separate decrees at each docket number should not be quashed, pursuant to, **inter alia**, **General Electric Credit Corporation v. Aetna Casualty and Surety Company**, 263 A.2d 448 (Pa. 1970) (establishing a three-part test to decide whether quashal was warranted where a single notice of appeal was filed in response to multiple final orders); 20 Pa.P.R.A.C. § 512 (stating that one appeal from several orders is discouraged). Thereafter, on May 8, 2020, this court issued an order discharging its rule to show cause order and referring this issue to the merits panel. In the interest of judicial economy, and in light of the fact that neither DHS nor Children's guardian **ad litem** ("GAL")[2] has objected, we decline to quash this matter on this basis and will proceed to address appellants' issues

---

[2] We note that DHS's brief to this court was joined by Children's GAL, Lenore Urbani, Esq., who was appointed by the juvenile court on March 16, 2020.

on the merits. *See*, *e.g.*, *In the Interest of P.S.*, 158 A.3d 643, 648 (Pa.Super 2017) (declining to quash a juvenile's appeal taken from both an order adjudicating him delinquent and a dispositional order entered following the revocation of his probation on the basis that the issues raised in each were closely related, the appellee did not object, and the appeal period had already expired), *appeal denied*, 174 A.3d 1029 (Pa. 2017); *K.H. v. J.R.*, 826 A.2d 863, 870 (Pa. 2003) (stating, "appellate courts have not generally quashed appeals, provided that the issues involved are nearly identical, no objection to the appeal has been raised, and the period for appeal has expired.").

Appellants raise the following issues for our review:

> 1. Did the [juvenile] court err and abuse its discretion in finding that [DHS] provided by clear and convincing evidence that the conditions which led to the removal and placement of [Children] continue to exist and that [Parents] cannot or will not remedy those conditions within a reasonable period of time?
>
> 2. Did the [juvenile] court err and abuse its discretion in finding that the [DHS] allowed sufficient time for [Parents] to respond to services by allowing termination parental rights after only eight months of services[?]

Appellants' brief at 8 (extraneous capitalization omitted).

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the

factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. [A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and internal quotation marks omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined "clear and convincing evidence" as that which is so "clear, direct,

weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (citation and quotation marks omitted).

In this case, the juvenile court terminated appellants' parental rights pursuant to Sections 2511(a)(1), (2), (5), and (b), which provide as follows:

### § 2511. Grounds for involuntary termination

**(a)** **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at

least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . . .

**(b)** **Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b).

Appellants' first claim challenges the juvenile court's decision to terminate their parental rights to Children pursuant to Subsection 2511(a)(5). (Appellants' brief at 8, 22-24.) However, we need only agree with the juvenile court as to any one subsection of Section 2511(a), in addition to Section 2511(b), to affirm a decree terminating parental rights. ***See***

*In re M.M.*, 106 A.3d 114, 117 (Pa.Super. 2014).  Instantly, we analyze the juvenile court's decision to terminate appellants' parental rights to Children under Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met:  (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015) (citations and internal quotation marks omitted).

"The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct.  To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties."  *Id.*  "Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities. . . . [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous."  *In re A.L.D.*, 797 A.2d 326, 340 (Pa.Super. 2002) (internal quotation marks and citations omitted).

Upon review, we find that there was clear and convincing evidence to support the juvenile court's termination of appellants' parental rights to Children, pursuant to Section 2511(a)(2).  The record establishes that

"incapacity" under Section 2511(a)(2) exists given that appellants have demonstrated a repeated and continual inability to address their substance abuse problems and parenting issues that led to the placement of Children. As noted, DHS became involved in this matter in June 2019 following a call to the Tioga County 911 Center that appellants were sleeping or had overdosed in a car parked on the side of the roadway, and that Children were found all running around outside the vehicle and were filthy. (Notes of testimony, 2/18/20 at 34-36.) Heather Patterson, the DHS caseworker assigned to Children, testified that at the time of the February 18, 2020 termination hearing, Father had yet to make any effort to address his substance abuse problems. (*Id.* at 129.) Mother, in turn, initially took steps to address her substance abuse issues by attending an inpatient rehabilitation program, but relapsed soon after her release from the program and took no further steps to address her substance abuse issues. (*Id.* at 128-32.) At the time of the termination hearing, both appellants had also failed multiple drug screenings. (*Id.* at 98-103.)

The record further reflects that appellants have demonstrated an unwillingness to actively engage or cooperate with DHS; take advantage of the visitation offered to them by DHS; or keep in regular contact with their caseworker or service providers. Although DHS funded taxi service for appellants to and from visitation, the record reflects that appellants have participated in only approximately one-half of the scheduled visits with

Children and only sporadically attended the medical, dental, and/or therapeutic appointments of Children. (*Id.* at 135-144). Additionally, Clara Holley, the Effective Safe Parenting ("ESP") caseworker assigned to work with appellants to achieve the goals of reunification, testified that she made 17 attempts to make contact with appellants in the two months preceding the termination hearing, and was successful only one time. (*Id.* at 97, 103-104.) Patterson also testified as to the difficulty she had in contacting appellants or getting them to engage in any services. (*Id.* at 146, 167.) We further agree with the juvenile court that "[n]o credible evidence indicates a likelihood that either [appellant] will take steps to address substance use and other concerns in the foreseeable future." (Juvenile court opinion (No. 552 MDA 2020; No. 7 OC 2020), 2/20/20 at 2, § 11.)

Based on the foregoing, we agree with the juvenile court that there exists clear and convincing evidence of record to terminate appellants' parental rights to Children pursuant to Section 2511(a)(2). ***See In re Adoption of C.D.R.***, 111 A.3d at 1216.

Next, we address whether the termination of appellants' parental rights was in Children's best interests, pursuant to Section 2511(b). With regard to Section 2511(b), our supreme court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include [i]ntangibles such as

> love, comfort, security, and stability. . . . [T]his Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267 (internal case citations omitted).

"[I]n cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa.Super. 2010) (citations omitted). When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010) (citations omitted). This court has long recognized that,

> [w]hile a parent's emotional bond with his or her child is a major aspect of the Section 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, 111 A.3d at 1219 (citations and internal quotation marks omitted).

Here, the juvenile court made the following findings with respect to the developmental, physical and emotional needs and welfare of each Child:

**S.M.**

> The Court begins by acknowledging that there is a bond between each [appellant] and [S.M.] [S.M.] recognizes [appellants] as parents and interacts with them during periods of visitation, in that context. The Court, however notes, that this bond and connection between [S.M.] has not been in all ways positive. The Court notes that [S.M.] has been diagnosed with Post Traumatic Stress Disorder. The Court further notes that the child, following an evaluation by [John] Higham, has been diagnosed with a person history of physical abuse, psychological abuse, and neglect in childhood.
>
> The Court is also cognizant of and notes the position of the Legal Interest Attorney, appointed on behalf of [S.M.], Attorney Megan Wells, after consultation with [S.M.], has indicated [S.M.'s] stated preference to no longer have contact with either [appellant], and a desire for permanency in the home of the current foster parents. As discussed above, [S.M.] has, since removal from the custody of [appellants], been attended to entirely by the foster parents, under the supervision of [DHS]. The current foster resource provides transportation and access to medical services in [S.M.'s] home community of Westfield. [S.M.] has also been provided with the appropriate and necessary dental care. [DHS] has taken steps to engage [S.M.] in recommended mental health therapy. The Court also notes that the testimony of the foster parent, Amber Swartley, indicating that she and her husband are prepared to provide permanency for [S.M.] and her siblings in the form of adoption, should the Court terminate the parental rights. Based upon the entirety of the record presented, the Court

> determines that it is clearly in [S.M.'s] long-term best interest that [appellants'] parental rights be terminated. [S.M.] is entitled to, pursuant to law, permanency, and while the Court is conscious of the fact that [S.M.] has been in placement for less than 1 year, the Court, as discussed above, has no confidence that [appellants] will take the necessary steps to reassume their parental responsibilities in the near future. A denial of termination at this point in time would result in a continued languishing of [S.M.], in a state between the foster parents and [appellants]. While the Court acknowledges that there are likely to be consequences in permanently severing the bond between [appellants] and [S.M.], the long-term best interest of [S.M.] clearly outweighs the temporary discomfort or inconvenience occasioned by termination.

Juvenile court opinion (No. 552 MDA 2020; No. 7 OC 2020), 2/20/20 at 7-8.

**K.M.**

> The Court begins by acknowledging that there is a bond between each [appellant] and [K.M.]. [K.M.] recognizes [appellants] as parents and interacts with them during periods of visitation, in that context. The Court, however notes, that this bond and connection between [K.M.] has not been in all ways positive, with a person [sic] history of physical abuse, psychological abuse, and neglect in childhood.
>
> As discussed above, [K.M.] has, since removal from the custody of [appellants], been attended to entirely by the foster parents, under the supervision of [DHS]. The current foster resource provides transportation and access to medical services in [K.M.'s] home community of Westfield. The Court also notes that the testimony of the foster parent, Amber Swartley, indicating that she and her husband are prepared to provide permanency for [K.M.] and his siblings in the form of adoption, should the Court terminate the parental rights. Based upon the entirety of the record presented, the Court determines that it is clearly in the [K.M.'s] long-term best interest that [appellants']

- 15 -

parental rights be terminated. [K.M.] is entitled to, pursuant to law, permanency, and while the Court is conscious of the fact that [K.M.] has been in placement for less than 1 year, the Court, as discussed above, has no confidence that [appellants] will take the necessary steps to reassume their parental responsibilities in the near future. A denial of termination at this point in time would result in a continued languishing of [K.M], in a state between the foster parents and [appellants]. While the Court acknowledges that there are likely to be consequences in permanently severing the bond between [appellants] and [K.M.], the long-term best interest of [K.M.] clearly outweighs the temporary discomfort or inconvenience occasioned by termination.

Juvenile court opinion (No. 553 MDA 2020; No. 8 OC 2020), 2/20/20 at 7-8.

**B.M.**

The Court begins by acknowledging that there is a bond between each [appellant] and [B.M.]. [B.M.] recognizes [appellants] as parents and interacts with them during periods of visitation, in that context. The Court, however notes, that this bond and connection between [B.M.] has not been in all ways positive, with a person [sic] history of physical abuse, psychological abuse, and neglect in childhood.

As discussed above, [B.M.] has, since removal from the custody of [appellants], been attended to entirely by the foster parents, under the supervision of [DHS]. The current foster resource provides transportation and access to medical services in [B.M.'s] home community of Westfield. The Court also notes that the testimony of the foster parent, Amber Swartley, indicating that she and her husband are prepared to provide permanency for [B.M.] and his siblings in the form of adoption, should the Court terminate the parental rights. Based upon the entirety of the record presented, the Court determines that it is clearly in the [B.M.'s] long-term best interest that [appellants'] parental rights be terminated. [B.M.] is entitled to, pursuant to law, permanency, and while the Court is

> conscious of the fact that [B.M.] has been in placement for less than 1 year, the Court, as discussed above, has no confidence that [appellants] will take the necessary steps to reassume their parental responsibilities in the near future. A denial of termination at this point in time would result in a continued languishing of [B.M], in a state between the foster parents and [appellants]. While the Court acknowledges that there are likely to be consequences in permanently severing the bond between [appellants] and [B.M.], the long-term best interest of [B.M.] clearly outweighs the temporary discomfort or inconvenience occasioned by termination.

Juvenile court opinion (No. 554 MDA 2020; No. 9 OC 2020), 2/20/20 at 7-8.

Our standard of review requires us to accept the juvenile court's findings of fact and credibility determinations where, as here, they are supported by the record. ***See In re T.S.M.***, 71 A.3d at 267. Accordingly, we agree with the juvenile court that the termination of appellants' parental rights to Children was proper under Section 2511(b).

In their final claim, appellants contend the juvenile court erred "in finding that the [DHS] allowed sufficient time for [appellants] to respond to services by allowing termination [of] parental rights after only eight months of services." (Appellants' brief at 8). Here, appellants failed to specifically raise or develop this issue in a separate section in the "Argument" portion of their appellate brief, opting instead to meld this argument into their discussion of Section 2511(a)(5). (***See*** appellants' brief at 19-24.) Having already found that termination of appellants' parental rights was proper under Section 2511(a)(2), and cognizant of the fact that we need only agree with the

juvenile court as to any one subsection of Section 2511(a) to affirm a termination decree, **see In re M.M.**, 106 A.3d at 117, we need not address this issue.

Based on the foregoing, we conclude that the juvenile court did not abuse its discretion by involuntarily terminating appellants' parental rights to Children pursuant to Section 2511(a)(2) and (b).  Accordingly, we affirm the juvenile court's February 20, 2020 decrees.

Decrees affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/16/2020