J-S35017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                     :        PENNSYLVANIA
                                                     :
              v.                                :
                                                     :
PATRICK L. TAYLOR                   :
                                                   :
              Appellant             :    No. 138 MDA 2022

Appeal from the Judgment of Sentence Entered September 21, 2021
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0001033-2020

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:      **FILED: DECEMBER 20, 2022**

Patrick Taylor appeals from the judgment of sentence entered following his convictions for flight to avoid apprehension, trial or punishment ("flight to avoid apprehension"), fleeing or attempting to elude police officer, reckless driving, registration and certificate of title required, and stop signs and yield signs.[1] Taylor challenges the sufficiency and weight of the evidence, as well as discretionary aspects of his sentence. We affirm.

Taylor was arrested and charged after leading police on a chase. In October 2020, Taylor's then-counsel moved to dismiss the flight to avoid apprehension charge, arguing the statute required that the defendant must have fled to avoid apprehension for a current criminal charge, and avoiding

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A § 5126(a), 75 Pa.C.S.A. §§ 3733(a), 3736(a), 1301(a), and 3323(b), respectively.

apprehension for a potential parole violation was not sufficient. The trial court did not rule on the motion before trial. During trial, Taylor re-raised the issue in a motion for judgment of acquittal, which the trial court denied. The following day, the trial court declared a mistrial because a juror failed to appear due to the COVID-19 pandemic. Prior to his second trial, Taylor, with new counsel, again raised a motion to dismiss the flight to avoid apprehension charge in an omnibus pre-trial motion. The court denied the motion.[2]

The trial court summarized the evidence presented at trial as follows:

> The Commonwealth presented the testimony of Officer Ryan Scott McClure of the Camp Hill Police Department, who was sitting in his marked patrol vehicle on the side of Route 15 South in Camp Hill, Cumberland County on July 19, 2019 around dusk. Officer McClure said [Taylor], the sole occupant of a silver Jeep, drove by him on Route 15 South, passing by the Capital City Mall. Officer McClure ran the Jeep's license plate and learned the registration was expired. Officer McClure pulled out onto Route 15 in his police vehicle and attempted to initiate a traffic stop on [Taylor] by activating his vehicle's lights and sirens. [Taylor] slowed as if he intended to stop as he approached an exit, but continued driving and took the exit, at the end of which he drove "straight through" a stop sign without coming to a complete stop before making a right turn. [Taylor]

---

[2] The trial court stated:

> [I]t appears that [the prior trial judge] previously ruled on this issue in a trial that occurred in 2020 that resulted in a mistrial due to a juror being sick, and such ruling is binding on this Court. To the extent he didn't specifically rule on the Motion to Quash Count 1 of the Information, and following argument by both counsel, the Motion to Quash Count 1 of the Information is hereby denied[.]

Order, dated July 13, 2021.

subsequently made a left turn to take him back to Route 15 North "so as to turn around." As Officer McClure followed, his lights and sirens remained activated. On Route 15 North, [Taylor] accelerated in his Jeep at a higher rate of speed, exceeding the posted speed limit of 50 mph in a heavy-traffic area, which Officer McClure described as "pretty crowded" with "a lot of cars on the road." Officer McClure decided to cease pursuing [Taylor's] vehicle without ever effecting the stop for safety and department policy reasons, given the speed and traffic conditions.

Officer McClure did not know the identity of [Taylor] at the time of the pursuit, but noted at the time that the driver was a "light skinned male with afro style hair and a large scrip[t] style writing tattoo on his right arm," which he could see because [Taylor's] window was rolled down as he drove by Officer McClure and Officer McClure had an unobstructed view of [Taylor].[31] Later, upon further investigation of the driver's identity, Officer McClure learned that the Jeep was registered to a Caprice King and that a few months prior, Caprice King and [Taylor] were the subjects of a traffic stop in that Jeep by Lower Swatara Police Department in Dauphin County. Officer McClure identified [Taylor] in the courtroom as the driver of the Jeep at issue here, noting that [Taylor] had a short haircut and no longer had a "large afro style haircut" at the time of trial. The Commonwealth also presented the testimony of Officer Patrick Ribec, who conducted the traffic stop in Lower Swatara Township on the Jeep at issue in March 2019. He said [Taylor] was driving the Jeep at the time of the traffic stop with its owner, Caprice King, as a passenger.

[31] Officer McClure's window was up, but he said his windows have no tint so he had a clear view.

The Commonwealth also presented the testimony of state parole agent Allen Shipley, who testified about the details of [Taylor's] parole and parole conditions imposed following a felony conviction. Agent Shipley said he was assigned to [Taylor] when he absconded from a halfway house in April 2019 . . . . He said when [Taylor] entered the halfway house, [Taylor's] parole agent would have required [Taylor] to sign a piece of paper "stating that this is your home plan and this is your approved address. If you leave this address, you are subject to violation of your parole." Agent Shipley explained

that when [Taylor] absconded from the halfway house, his agency obtained a felony parole warrant for [Taylor's] arrest which was still active on July 19, 2019, the date of Officer McClure's attempted traffic stop. Agent Shipley did not personally notify [Taylor] of the warrant for his arrest, however, and he was assigned to [Taylor's] supervision only after [Taylor] absconded from the halfway house. He did not know whether [Taylor] knew about the warrant during the attempted traffic stop. [Taylor] turned himself in to the parole office in May 2020 on the warrant.

Finally, the Commonwealth presented recordings of four phone calls which were stipulated by defense counsel to have been made by [Taylor] in the months of May or June 2020. In the first call, placed on May 22, 2020, [Taylor] is on the telephone telling someone on the other end,

> I need you to go talk to Caprice . . . . Tell her they're trying to charge me with all this shit about from that time in her truck. I need her to at least see if she can come to court for me on Wednesday . . . . They gave me all these goddamn charges for a goddamn car and some bullshit that I can get taken care of Wednesday if she show[s] up and say[s] it wasn't me. . . . Try to get in contact with Caprice A.S.A.P. . . . Get in contact with her, tell her I need to talk to her A.S.A.P., it's important. . . . `Cause if she show[s] up, and she can get in contact with my lawyer then she can show up and say he wasn't the one driving at that point in time. . . . I'll be good, they gotta throw this shit out.

In the second call, placed on May 23, 2020, [Taylor] tells the other person on the phone,

> I tried to call Caprice. . . . I need to talk to her. It's very important. . . . I might need her to come to court Wednesday to say that it wasn't me driving, it was somebody else. I don't give a fuck who[se] name she say[s,] . . . just tell them it wasn't me. . . . The cop tried to get behind me when I was going to the mall. . . . I told myself I ain't going to jail so I put gas on his ass. You know I ain't going to jail. . . . My radar said go, I go.

In the third call, placed the same day, [Taylor] said,

I might need her to show up and say it wasn't me driving her truck. If she show[s] up and say[s] it wasn't me driving, I'm gravy. They gotta throw all that shit out. Remember last year before I went to Florida the second time, [unintelligible], that's why I took 'em on a chase. . . . I had thought I caught a [unintelligible], and I went on that chase. . . . That's what they charged me with.

In the fourth call, placed May 24, 2020, which defense stipulated is a call [Taylor] made to Caprice King, [Taylor] said the following,

The second time when I was driving . . . you know that situation. . . . If you can show up and tell them it wasn't me, you know what I'm saying, you see what I'm saying?

Caprice King responded, "I do see what you're saying."

Trial Court Opinion, filed May 5, 2022, at 7-11 (citations and most footnotes omitted) (some alterations in original).

A jury found Taylor guilty of flight to avoid apprehension (count 1) and fleeing or attempting to elude a police officer (count 2). The court found him guilty of reckless driving, registration and certificate of title required, and stop signs and yield signs.

At sentencing, Taylor told the court that his 16-year-old daughter had lupus, he had been helping to take care of her, and he hoped to continue to do so when he returned from prison. N.T., Sept. 21, 2021, at 5. The Commonwealth informed the court that 48 hours after Taylor was released on bail pending sentencing, he cut off his GPS ankle monitor and fled. *Id.* at 7. The Commonwealth stated it "had to use tremendous resources in order to have Mr. Taylor in custody for th[e] sentencing." *Id.* It argued that

"throughout this case, through his criminal history, [Taylor] has shown he absolutely will not listen to any court order." *Id.* at 7. It asked the court to impose the maximum sentence at each count, which would be three and a half to seven years at count 1 and one to two years at count 2, and asked that they run consecutive to each other and to any other sentence Taylor received. *Id.* at 8.

The trial court stated it had received a presentence investigation report ("PSI"), and that the standard range guidelines for the fleeing to avoid apprehension conviction were 12 to 18 months. It sentenced Taylor to 21 to 42 months' imprisonment for the flight to avoid apprehension conviction and a consecutive nine to 24 months' imprisonment for the fleeing or attempting to elude a police officer conviction. The court ordered the sentences to run consecutively to any other sentence Taylor was then serving. The court gave the following reasons for the sentence:

> The sentence imposed at Count 1 is in the aggravated range of the sentencing guidelines and is given in consideration that it appears that [Taylor's] prior record and his behavior, and the facts of the instant case combined with his cutting off a GPS ankle monitoring bracelet when th[e c]ourt allowed him to remain free on bail pending sentencing, and fleeing from State Parole at that time, provides information to this Court that [Taylor] is not amendable to rehabilitation.
>
> Th[e c]ourt further notes that the sentence imposed at Count 2 is in the standard range of the sentencing guidelines.

*Id.* at 11-12.

Taylor filed a post-sentence motion challenging the sufficiency and weight of the evidence, and the discretionary aspects of his sentence. In challenging the sentence, Taylor argued "[t]he sentence imposed by the Court at Count 1 was in the aggravated range, at Count 2 was at the top of the standard range, with the sentence at Count 2 running consecutively to the sentence imposed at Count 1 and any other sentences [Taylor] was currently serving, with both being excessive and unduly harsh." Post-Sentence Motion, filed Sept. 30, 2021, at ¶ 24. The trial court denied the motion. Taylor filed a timely notice of appeal.

Taylor raises the following issues:

I. Whether the trial court erred in denying [Taylor's] omnibus pretrial motion, with respect to the portion denying [Taylor's] request to quash count I of the Information?

II. Whether the evidence was insufficient to sustain the verdict of guilt?

III. Whether the verdicts were against the weight of the evidence?

IV. Whether the trial court abused its discretion in imposing sentences in the aggravated range, at the top of the standard range, and in running the sentence at Count II consecutively to the sentence imposed at Count I and both sentences consecutively to any other sentence [Taylor] was serving?

Taylor's Br. at 6.

In his first issue, Taylor argues that the court erred in denying his pre-trial motion to quash the flight to avoid apprehension charge. The pre-trial motion to quash is moot, as the jury found Taylor guilty of flight to avoid

apprehension. ***Commonwealth v. Haney***, 131 A.3d 24, 36 (Pa. 2015) (citations omitted); ***see also Commonwealth v. Lee***, 662 A.2d 645, 650 (Pa. 1995) ("[Defendant's] adjudication of guilt renders moot any allegation that the Commonwealth failed to establish a prima facie case with respect to the homicide [at the preliminary hearing]"). After a verdict is entered, a defendant may challenge the sufficiency of the evidence to support the conviction. Taylor raises such a claim, which we address next.

When reviewing a challenge to the sufficiency of the evidence, we "must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." ***Commonwealth v. Feliciano***, 67 A.3d 19, 23 (Pa.Super. 2013) (*en banc*) (quoting ***Commonwealth v. Stokes***, 38 A.3d 846, 853 (Pa.Super. 2011)). We review the evidence *de novo*, but do not substitute our weighing of the evidence for that of the factfinder, who is free to believe all, part, or none of the evidence. ***Commonwealth v. Hall***, 199 A.3d 954, 960 (Pa.Super. 2018).

Taylor argues that the evidence did not support the flight to avoid apprehension conviction, graded as a third-degree felony. To support such a conviction, the Commonwealth had to prove that at the time of the incident, Taylor had a new, pending felony charge or was awaiting sentencing on a felony conviction. Taylor maintains that neither condition existed here. He further argues the Commonwealth failed to prove he had notice of the state

parole warrant and failed to present evidence he had notice of the conditions of his parole. He points out that although Parole Agent Shipley testified that Taylor had absconded from a halfway house he was required to live in and a felony parole warrant was issued, Agent Shipley did not know whether Taylor was notified of the warrant. He further claims the Commonwealth did not present documentation signed by Taylor that alerted him to his conditions of parole or testimony of a parole officer who informed Taylor of the conditions.

A person commits the crime of flight to avoid apprehension if he "willfully conceals himself or moves or travels within or outside this Commonwealth with the intent to avoid apprehension, trial or punishment." 18 Pa.C.S.A. § 5126(a). The crime is a felony of the third degree if the crime with which the defendant was charged or of which he was convicted is a felony. **Id.** "Section 5126 'requires that a person has been charged with a crime' at the time he or she flees from law enforcement." **In Int. of P.S.**, 158 A.3d 643, 652 (Pa.Super. 2017) (quoting **Commonwealth v. Phillips**, 129 A.3d 513, 518 (Pa.Super. 2015)).

Several precedents guide our decision here. In **Commonwealth v. Steffy**, 36 A.3d 1109 (Pa.Super. 2012), the police stopped the defendant for speeding. They learned he had an outstanding arrest warrant for violation of probation and informed the defendant of the warrant. The defendant fled when a police officer attempted to handcuff him. **Id.** at 1110. The Commonwealth charged the defendant with a felony violation of Section 5126 because the outstanding warrant was for violation of probation on a felony charge. The

defendant challenged the sufficiency of the evidence, claiming he did not know that the outstanding bench warrant was related to a felony. *Id.* at 1111. This Court rejected the defendant's argument, reasoning that the statute does not require knowledge of the grade of offense for which he is attempting to avoid apprehension. *Id.* at 1111-12. In addition, we rejected the defendant's claim that he did not know that the warrant was premised on his violations of probation, concluding that "[k]nowledge of his probation conditions must also be attributed to him; therefore, he would be aware of whether . . . he was in violation of those terms and conditions." *Id.* at 1112.

In *In Interest of P.S.*, the police attempted to effectuate a traffic stop of a vehicle that had been reported stolen. The driver of the vehicle, later determined to be the defendant, fled and did not stop until the vehicle collided with a tree. The defendant was on the juvenile equivalent of probation at the time he fled but there was no outstanding warrant, he had not been charged with a crime, and he was not awaiting sentencing. 158 A.3d at 652. We concluded the evidence was insufficient to support the adjudication of delinquency for flight to avoid apprehension. We explained that "the statute says nothing about fleeing to avoid apprehension for potential probation violations." *Id.*

In *Commonwealth v. Schuster*, 2021 WL 2624685, at *1 (Pa.Super. June 25, 2021),[3] an arrest warrant had been issued for the defendant after he

---

[3] Unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value. *See* Pa.R.A.P. 126(b)

- 10 -

absconded from probation. The defendant stipulated that he was aware he was on probation. The defendant also told a probation officer he was aware of the warrant because he saw a post on the sheriff's department's Facebook page. Police officers responded to a call that the defendant had been seen walking down a street and, when they approached the defendant, he ran and attempted to hide. *Id.* We concluded the evidence supported the flight to avoid apprehension conviction because the defendant had stipulated that there was a warrant for his arrest for a violation of probation and that he knew the terms of his supervision, and a probation officer testified the defendant told her he knew there was a warrant out for his arrest. *Id.*, at *3. We concluded that "when a defendant has knowledge of a pending probation violation, if the defendant absconds from supervision it may serve as a basis for a charge of flight to avoid apprehension." *Id.*

Here, the trial court concluded sufficient evidence supported a finding that Taylor was aware he was wanted because he knew the terms of his probation and knew absconding from the halfway house was a violation of probation. Agent Shipley testified that Taylor would have been informed he had to remain at the half-way house as a term of his parole, and he absconded therefrom. Further, Taylor made statements during the phone calls that support a finding he was aware he was wanted for violating his parole, including Taylor's statement that he "told himself [he] ain't going to jail so [he] put gas on his ass." Trial Ct. Op. at 12 (citation omitted). Unlike the defendant in *P.S.*, Taylor was not fleeing because he was committing a new

crime at the time of the chase, such that the underlying crime was a "potential" violation. Rather, the evidence supported findings that Taylor was fleeing to avoid arrest on a warrant for a known parole violation, and that he knew he was wanted for absconding from parole.

Taylor also challenges the sufficiency of the evidence for all convictions, arguing the Commonwealth failed to establish he was driving the car. He points out that Officer McClure followed the vehicle and attempted to stop it but ended the pursuit before the vehicle stopped. He notes that the incident occurred "around dusk," at about 8:30 p.m., the road was crowded, and Officer McClure described the driver only as a light-skinned man with afro-style hair and a large script style tattoo on his right arm. He points out the officer determined the car belonged to Caprice King, who had prior contact with the police while Taylor was in the vehicle. He argues Officer McClure made the identification at trial based on an event that occurred two years earlier where he "casually observ[ed]" the vehicle drive by. Taylor's Br. at 26-27.

"[E]vidence of identification need not be positive and certain to sustain a conviction." **Commonwealth v. Jones**, 954 A.2d 1194, 1197 (Pa.Super. 2008). Common items of clothing and general physical characteristics are usually insufficient to support a conviction, but "such evidence may be considered to establish identity along with other circumstances and the proffered identification testimony." **Commonwealth v. Minnis**, 458 A.2d 231, 233 (Pa.Super. 1983). "[A]ny indefiniteness and uncertainty in the identification testimony goes to its weight." **Id.**

- 12 -

The trial court rejected Taylor's claim because "Officer McClure had an unobstructed view of [Taylor], who was driving with his window down, and identified [Taylor] as the driver of the Jeep at trial." Trial Ct. Op. at 13. The court noted that Officer McClure initially identified Taylor because a few months before the traffic stop at issue, Taylor had been stopped in the same Jeep with its owner during a traffic stop. Further, during the phone calls, Taylor identified himself as the driver, including stating, "[t]he second time I was driving . . . you know that situation" and "[r]emember last year . . . that's why I took 'em up on a chase." *Id.* (citation omitted) (alterations in original).

We agree with the trial court that the Commonwealth presented sufficient evidence to identify Taylor as the driver of the vehicle. Officer McClure identified Taylor, and testified he was able to see the driver. Taylor's statements during the phone calls further support a finding he was driving the vehicle at the time of the traffic stop.

Taylor next claims the trial court erred in denying his challenge to the weight of the evidence. He argues King's testimony contradicted and raised questions regarding the validity of Officer McClure's identification of Taylor. He points out that King owned the vehicle and testified she did not give Taylor permission to use it and he did not have access to her home or car keys. He claims this contradicts Officer McClure's testimony, as he made only a "brief, casual observation of a person driving by on a busy road with many cars driving by at the same time." Taylor's Br. at 30.

When reviewing a challenge to the weight of the evidence, we review "the trial court's exercise of discretion." *Commonwealth v. Johnson*, 192 A.3d 1149, 1152-53 (Pa.Super. 2018) (citing *Commonwealth v. Hicks*, 151 A.3d 216, 223 (Pa.Super. 2016)). A reversal of a verdict is not necessary "unless it is so contrary to the evidence as to shock one's sense of justice." *Id.* at 1153. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Cramer*, 195 A.3d 594, 600 (Pa.Super. 2018) (citation omitted). The fact-finder also has the responsibility of "[r]esolving contradictory testimony and questions of credibility." *Id.* (citation omitted). We give great deference to the trial court's decision regarding a weight of the evidence claim because it "had the opportunity to hear and see the evidence presented." *Id.* at 601. (citation omitted).

The trial court concluded the verdict was not against the weight of the evidence:

> We did not find the Commonwealth's evidence so tenuous, vague, or uncertain such that any of the guilty verdicts shocked our sense of justice. We will review some contradictory evidence to more fully respond to this claim. At cross-examination, [Taylor's] counsel attempted to undercut Officer McClure's direct examination testimony that he could clearly see [Taylor] in the Jeep, given that both the officer and [Taylor] were in vehicles and [Taylor] was driving by at the point of identification. Officer McClure, however, said that though his own vehicle's window was up, the window was not tinted, and he therefore had an unobstructed view of [Taylor] as he drove by. He also pointed out that the sun was still out and light enough to see. Officer McClure conceded he could not identify what

- 14 -

color shirt [Taylor] was wearing while driving or if he had facial hair or earrings, for example. However, we did not find such evidence compelling enough to outweigh the Commonwealth's evidence, which we have summarized herein, which included [Taylor] discussing the chase in telephone recordings at length, strongly suggesting he was the driver.

We also note that defense produced Caprice King to testify. She testified that she had always been friends with [Taylor] since they were children. She said that on the morning of July 19, 2019, she left her Jeep and keys at her sister's house while she was at work. She said [Taylor] did not live with her, nor have keys to the residence where her keys were, and that other people in the house had access to her Jeep keys. She said she never gave anyone permission to drive her Jeep that day and did not know that anyone did drive her Jeep that day. Ms. King said she recalled [Taylor] asking her to come to court to testify about July 19, 2019, but generally appeared reluctant to say what exactly [Taylor] wished her to say about the incident. The Commonwealth presented Ms. King with the recording of her phone call with [Taylor], during which he said, "The second time when I was driving ... you know that situation," and, later, "If you can show up and tell them it wasn't me, you know what I'm saying, you see what I'm saying?" Questioning ensued ad nauseum about the effect of this recording on her testimony, but the essential result was that she said she thought he was referring to an earlier time when he had permission to drive her car, but was not sure what he was referencing. The Commonwealth ultimately impeached Ms. King via admission of a 2016 prior conviction for False Identification to Law Enforcement. Ms. King's testimony did little to aid defense, as Ms. King did not know whether or not [Taylor] drove her vehicle on July 19, 2019, and, frankly, the main effect of her testimony was that she appeared to be nervously attempting to say as little as possible on the matter.

We note that much of the evidence was undisputed outside of identification of the driver of the Jeep and whether [Taylor] knew he was wanted by law enforcement while fleeing. On these points, too, we found the weight of the evidence to be in the Commonwealth's favor. We reiterate that [Taylor] was undisputedly on parole, that a condition of

same was to remain at the halfway house, that he absconded therefrom, and that he fled from Officer McClure attempting to conduct a traffic stop. [Taylor's] recorded phone calls reveal him pleading with someone to get in touch with Ms. King in an attempt to have her testify he was not driving, in addition to other statements indicating that he was in fact driving and that he led Officer McClure on a chase because he did not want to go to jail. We cannot reasonably conclude from this evidence that [Taylor] did not intend to avoid apprehension. The remaining counts, more straightforward in their elements, were met with ample credible evidence, and the weight of the same went largely unchecked by contrary evidence or cross-examination. We did not find the verdicts against the weight of the evidence.

Trial Ct. Op. at 16-19.

This was not an abuse of discretion. The credibility of the witnesses was for the fact-finder, who chose to believe Officer McClure. King's testimony did not outweigh the evidence supporting Taylor's guilt, including Officer's McClure's testimony and the phone calls.

In his final claim, Taylor argues the trial court abused its discretion when it imposed sentences in the aggravated range and at the top of the standard range, and that ran consecutively. He claims the trial court erred by imposing a sentence in the aggravated range while relying on impermissible factors, giving insufficient reasons, and failing to consider the sentencing factors, including protection of the public, impact on the victims, and impact on the community. He argues the court's errors resulted in an excessive and harsh aggregate sentence. Taylor claims the court provided no reasons for imposing a top standard range sentence at count II, which it ran consecutive, and no

reasons as to why it ran the sentences consecutive to other sentences Taylor was serving.

There is no absolute right to appeal the discretionary aspects of a sentence. **Commonwealth v. Cartrette**, 83 A.3d 1030, 1042 (Pa.Super. 2013) (*en banc*). Rather, we employ a four-part analysis before addressing a challenge to discretionary aspects of sentence. We must determine whether the appellant: (1) filed a timely notice of appeal; (2) properly preserved the sentencing issue at sentencing or in a motion to reconsider or modify sentence; (3) included in the appellate brief a concise statement of the reasons relied upon for allowance of appeal; and (4) has asserted a substantial question that the sentence is not appropriate under the Sentencing Code. **See Commonwealth v. Austin**, 66 A.3d 798, 808 (Pa.Super. 2013); 42 Pa.C.S.A. § 9781(b). "[I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case." **Austin**, 66 A.3d at 808 (citation omitted).

Taylor filed a timely notice of appeal and preserved in a post-sentence motion a claim the court imposed an excessive sentence that included an aggravated range sentence and consecutive sentences without considering the factors set forth in the Sentencing Code. However, his post-sentence motion did not preserve his claim the court relied in impermissible factors. He therefore waived that claim on appeal. **See Commonwealth v. Moury**, 992 A.2d 162, 172 (Pa.Super. 2010) (finding claim waived when not raised in post-sentence motion or at sentencing).

- 17 -

Taylor's claim that the court imposed an excessive sentence, including consecutives sentences, without considering the factors set forth in the Sentencing Code and other relevant factors raises a substantial question. **See Commonwealth v. Felmlee**, 828 A.2d 1105, 1107 (Pa.Super. 2003) (*en banc*) (stating that a substantial question is raised where appellant claims the sentencing court imposed an aggravated range sentence without considering mitigating circumstances); **Commonwealth v. Riggs**, 63 A.3d 780, 786 (Pa.Super. 2012) (finding that appellant raised a substantial question when he argued that "the trial court failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense and the rehabilitative needs of [a]ppellant, as 42 Pa.C.S.A. § 9721(b) requires"). We will therefore review the merits of this claim.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." **Commonwealth v. Edwards**, 194 A.3d 625, 637 (Pa.Super. 2018) (citation omitted). An abuse of discretion occurs where "the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." **Id.** (citation omitted). In imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). Where a PSI exists, we "presume that the sentencing judge was aware of relevant

- 18 -

information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Rush***, 162 A.3d 530, 545 n.12 (Pa.Super. 2017) (quoting ***Commonwealth v. Macias***, 968 A.2d 773, 778 (Pa.Super. 2009)).

Here, the trial court considered the PSI, the fact that Taylor removed his GPS monitoring anklet after his conviction, and other factors in imposing the sentence. It set forth its reasons for imposing an aggregate range sentence on count I, finding Taylor was not amendable to rehabilitation. It reasoned that Taylor's prior record, the facts of this case, and his removing the GPS ankle monitoring bracelet while awaiting sentencing support that he is not amendable. We conclude the court considered all appropriate factors and did not impose an excessive or harsh sentence. The court did not abuse its discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/20/2022