J-S39038-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CHARLES RICHARD BRONSON | : | |
| | : | |
| Appellant | : | No. 547 MDA 2022 |

Appeal from the Judgment of Sentence Entered February 28, 2022
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0004072-2019

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED:  MARCH 6, 2023**

Appellant Charles Richard Bronson appeals from the judgment of sentence imposed following a bench trial at which he was convicted of flight to avoid apprehension and related offenses.   Appellant argues that the Commonwealth failed to establish that he fled from police with the intent to avoid apprehension.  Following our review, we affirm.

The trial court summarized the facts of this case as follows:

The trial was held with [Appellant] *in absentia*, but represented by counsel.[fn1] The charges arose from events occurring on June 13, 2019.  Pennsylvania State Police Trooper William McDermott, who testified on behalf of the Commonwealth, was the sole witness at trial.  [N.T. Trial, 9/1/21, at 10-13].  Trooper McDermott testified that on the date in question, he was working the night shift from approximately 8:00 p.m. until 6:00 a.m.  **Id.** at 14.  He was monitoring a construction zone in Avoca and Duryea Borough on Interstate 81 South near exit 178.  **Id.** at 14. Trooper McDermott testified that he conducted a traffic stop around 1:00 a.m. when his radar detected a car going 83 miles an hour in a 55 mile per hour zone.  **Id.** at 15-16.  He said after the vehicle passed, he

pulled out behind the car, activated his emergency lights and stopped the car. *Id.* at 16. He testified that, while wearing his uniform, he identified himself by name and said he was with the Pennsylvania State Police. *Id.* at 29. He told the driver he had stopped him for speeding. *Id.* at 17. He told the driver he had clocked him driving 83 miles per hour[,] and the driver told him he was going 77 miles per hour. *Id.* at 17. When the trooper asked the driver for his license, registration and insurance, the driver said his license had been suspended. *Id.* at 17. When the trooper asked why the license had been suspended, the driver told him it had been suspended for speeding. *Id.* at 17. The trooper then asked the driver for his name. *Id.* at 17. The driver said his name was Tom Robbins, but the trooper positively identified him at trial as [Appellant], Charles Bronson. *Id.* at 17, 24. Trooper McDermott said he told the driver to stay in the car. *Id.* at 17. The trooper returned to the patrol car to search "Tom Robbins" by his date of birth. *Id.* at 17-18. When the trooper opened the door to the patrol car, the driver drove away down the interstate south heading towards Wilkes-Barre. *Id.* at 18.

> [fn1] Before trial, [Appellant] waived his right to a jury trial and made clear to the court on the record that he did not wish to participate at his bench trial. Pursuant to his request, [Appellant] was removed from the courtroom. [N.T. Trial, 9/1/21, at 10-13].

The trooper testified that he immediately began to follow the driver and called the incident into the officer on dispatch looking for a backup car to assist him. *Id.* at 19. He said the vehicle he was following remained on 81 south until exit 168, when he got off the exit, made a U-turn and got back on the interstate driving north. *Id.* at 19. Trooper McDermott continued to pursue [Appellant's] vehicle. *Id.* at 20. The trooper testified that he looked at his speedometer several times during his pursuit of [Appellant's] vehicle and said that he was driving 120 miles per hour. *Id.* at 19. He said [Appellant] was not using turn signals and had no headlights on at times. *Id.* at 20. Traveling at over 120 miles per hour, [Appellant] passed tractor trailers and was weaving in and out of traffic until he got to exit 175, when he got off the interstate. *Id.* at 21. The trooper testified that the maximum speed limit was 55 miles an hour. *Id.* at 21. In addition, he said that he believed that some of the individuals working in the active construction zone [Appellant] sped through had to jump out of the way. *Id.* at 28. The trooper testified that

a video of the vehicle stop and the pursuit was recorded and the video was shown during the trial. ***Id.*** at 18, 26.

When [Appellant] left the interstate, the pursuit continued up through Center Point Industrial Park onto Keystone and Stone Avenues before reaching a dead end in a parking lot. ***Id.*** at 22. When [Appellant's] vehicle stopped, the trooper saw [Appellant] jump out of the car and flee on foot into a wooded area behind the industrial park. ***Id.*** at 22.

Trooper McDermott testified that two other troopers arrived at the scene, and he and one of the other troopers pursued [Appellant] into the woods but were unable to find him. ***Id.*** at 23. The other trooper remained behind with the vehicle. ***Id.*** at 23. After being unable to apprehend [Appellant], the troopers secured his vehicle. ***Id.*** at 23. A wallet was laying in the center console area. ***Id.*** at 23. Trooper McDermott opened the wallet and found a birth certificate and an access card containing the name "Charles Bronson." ***Id.*** at 23. [Trooper McDermott did not] find anything in the car with the name "Tom Robbins." ***Id.*** at 23.

The trooper testified that he entered the name Charles Bronson into the NCIC and CLEAN police systems and found that Charles Bronson was the operator of the vehicle by the photo appearing on JNET. ***Id.*** at 24. He said that he compared the JNET photo to prior arrest photos and was convinced that Charles Bronson was the individual who had been operating the vehicle during the pursuit. ***Id.*** at 24-25. He testified that there was no doubt in his mind that [Appellant] was the driver of the car on June 13. ***Id.*** at 29-30. He further testified that during his investigation, he found that Charles Bronson had several active warrants for his arrest at the time of the pursuit. ***Id.*** at 24, 27. [Appellant] was apprehended approximately three weeks after the June 13 vehicle chase. ***Id.*** at 25.

Trial Ct. Op., 7/1/22, at 2-5 (some formatting altered).

On June 17, 2019, the Commonwealth charged Appellant with flight to avoid apprehension, recklessly endangering another person (REAP), false identification to a law enforcement officer, fleeing or attempting to elude an

officer, and eight summary violations of the Motor Vehicle Code.[1]  On September 1, 2021,[2] the trial court found Appellant guilty of flight to avoid apprehension, fleeing or attempting to elude an officer, false identification to a law enforcement officer, and six summary violations of the Motor Vehicle Code.  The trial court found Appellant not guilty of the remaining offenses.

Appellant filed a motion for extraordinary relief on October 21, 2021 seeking an arrest of judgment or, in the alternative, a judgment of acquittal on the charges for flight to avoid apprehension and providing false identification to law enforcement.  Mot. for Extraordinary Relief, 10/21/21, at 1-3 (unpaginated).  Appellant also requested that the trial court downgrade his charge for fleeing or attempting to elude a police officer from a third-degree felony to a misdemeanor of the second degree.  ***Id.***  The trial court denied Appellant's motion and sentenced Appellant to an aggregate term of twenty-seven to fifty-four months' incarceration on February 28, 2022. Appellant did not file any post-sentence motions.

_____

[1] 18 Pa.C.S. §§ 5126(a), 2705, 4914(a), 75 Pa.C.S. §§ 3733(a), 3112(a)(3)(i), 3334(a), 3361, 3362(a)(3), 3714(a), 3734, 3736(a), and 1543(a), respectively.

[2] Appellant's trial was delayed due to the COVID-19 pandemic.

- 4 -

Appellant subsequently filed a timely notice of appeal[3] and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

_____

[3] We note that Appellant's counsel timely filed a notice of appeal to PACFile electronic filing system on March 29, 2022. However, due to a technical error, the notice of appeal was rejected and returned to Appellant's counsel the following day. Appellant's counsel resubmitted the notice of appeal on March 31, 2022, and this Court docketed counsel's facially untimely appeal at 524 MDA 2022. **See** Notice of Appeal, 3/31/22. After the PACFile system rejected Appellant's first notice of appeal, in an abundance of caution, Appellant filed a motion to reinstate his direct appeal rights *nunc pro tunc*, which the trial court granted. **See** Mot., 4/1/22; Trial Ct. Order, 4/5/22.

However, because Appellant's first appeal at 524 MDA 2022 was already pending when Appellant filed the motion to reinstate his direct appeal rights, the trial court did not have jurisdiction to grant Appellant's motion. **See** Pa.R.A.P. 1701(a) (stating that "[e]xcept as otherwise prescribed by these rules, after an appeal is taken . . . the trial court . . . may no longer proceed further in the matter"); **Bell v. Kater**, 839 A.2d 356, 357-58 (Pa. Super. 2003) (quashing appeal *nunc pro tunc* where the trial court granted a petition reinstating the appellant's appellate rights *nunc pro tunc* while the appellant's first, untimely appeal was pending before this Court). Therefore, Appellant's subsequent notice of appeal, which was docketed at 547 MDA 2022, should have been treated as a legal nullity. **See** Pa.R.A.P. 1701(a); **Bell**, 839 A.2d at 358. Rather than dismissing the instant appeal at 547 MDA 2022 as duplicative of the pending appeal at 524 MDA 2022 or as a nullity, this Court dismissed Appellant's timely appeal at 524 MDA 2022 as duplicative on May 3, 2022. **See** Order, 524 MDA 2022, 5/3/22.

Under these circumstances, we conclude that a breakdown in this Court's processes occurred, and we decline to quash the instant appeal. **See** **generally Commonwealth v. Patterson**, 940 A.2d 493, 498 (Pa. Super. 2007); **accord Commonwealth v. Cooper**, 27 A.3d 994, 1007 (Pa. 2011) (explaining that after this Court dismissed a timely appeal as duplicative, this Court should have decided the appellant's pending "premature" appeal on the merits). Accordingly, we deem Appellant's appeal timely filed.

On appeal, Appellant raises the following issue for review:

> Whether the Commonwealth failed to present sufficient evidence to prove beyond a reasonable doubt that [Appellant] was guilty of flight to avoid apprehension where the record failed to establish that [Appellant] knew or was aware that there were two active warrants filed against him.

Appellant's Brief at 9.[4]

Appellant challenges the sufficiency of the evidence supporting his conviction for flight to avoid apprehension. Specifically, Appellant claims that in order to establish intent, the Commonwealth was required to prove that Appellant knew that there was an active or outstanding warrant for his arrest at the time he fled from police. *Id.* at 11, 13. In support, Appellant relies on *Commonwealth v. Steffy*, 36 A.3d 1109 (Pa. Super. 2012), a case in which the defendant was informed about the active warrant before he fled from police. *Id.* at 14-15 (citing *Steffy*, 36 A.3d at 1112). Appellant argues that,

---

[4] Appellant presented four additional issues in his Rule 1925(b) statement that he does not include in his brief. *See* Rule 1925(b) Statement, 4/26/22. Specifically, Appellant claimed that (1) the Commonwealth failed to use due diligence in bringing him to trial in a timely manner, (2) that the record was devoid of proof that Appellant was aware that he was subject of an official investigation, (3) that the Commonwealth did not present sufficient evidence to establish that the charge of flight to avoid apprehension should be graded as a felony of the third degree rather than a misdemeanor of the second degree, and (4) that the Commonwealth did not present sufficient evidence to establish that the charge of fleeing or attempting to elude an officer should be graded as a felony of the third degree rather than a misdemeanor of the second degree. *See id.* at 3-4. Accordingly, we conclude that Appellant has abandoned those issues on appeal. *See* Pa.R.A.P. 2116(a), 2119(a); *see also Commonwealth v. McGill*, 832 A.2d 1014, 1018 n.6 (Pa. 2003) (finding waiver where the appellant abandoned claim on appeal). However, even if the issues were not waived, we agree with the trial court's sound reasoning, therefore, we would conclude that Appellant is not entitled to relief.

in the instant case, Trooper McDermott did not discover that Appellant had an outstanding arrest warrant until he was apprehended. *Id.* at 21-22. Further, Appellant argues that "there is no other evidence . . . that [he] was aware of the active warrants and it is just as likely that [he fled] because he was driving with a suspended license . . . and did not possess knowledge that an active warrant for his arrest already existed." *Id.* Therefore, Appellant concludes the Commonwealth failed to present sufficient evidence to establish Appellant's intent. *Id.*

When reviewing a sufficiency claim, our standard of review is as follows:

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted and formatting altered).

A person commits the crime of flight to avoid apprehension if he "willfully conceals himself or moves or travels within or outside this Commonwealth with the intent to avoid apprehension, trial or punishment." 18 Pa.C.S. §

5126(a). With respect to grading, Section 5126 provides that a defendant who flees from police to avoid apprehension commits "a felony of the third degree when the crime which he has been charged with or has been convicted of is a felony and commits a misdemeanor of the second degree when the crime which he has been charged with or has been convicted of is a misdemeanor." *Id.*

"This Court has previously determined that Section 5126 'requires that a person has been charged with a crime' at the time he or she flees from law enforcement." *In re Interest of P.S.*, 158 A.3d 643, 652 (Pa. Super. 2017) (citing *Commonwealth v. Phillips*, 129 A.3d 515, 518 (Pa. Super. 2014).

Further, this Court has explained:

> The plain language of the statute requires that the defendant intend to avoid apprehension, trial or punishment. The statute does not mandate that the defendant have knowledge of the precise grading of the offense for which he is attempting to avoid capture. The intent element of the crime is separate and apart from whether the person has been convicted or is charged with a felony. Furthermore, nothing in the statutory language requires that police have knowledge of the underlying charge or conviction. **It is sufficient for the defendant to intentionally elude law enforcement to avoid apprehension**, trial or punishment on a charge or conviction. Where that charge or conviction is a felony, the flight to avoid apprehension charge is properly graded as a felony of the third degree.

*Steffy*, 36 A.3d at 1111-12 (emphasis added); *see also Commonwealth v. Thompson*, 1599 MDA 2018, 2019 WL 2121513, at *2-3 (Pa. Super. filed

- 8 -

May 14, 2019) (unpublished mem.)[5] (rejecting the defendant's claim that the Commonwealth was required to prove that the defendant "was aware that there were active warrants for his arrest" and concluding that there was sufficient evidence to prove the intent element of Section 5126 where the defendant fled from police while he had an outstanding warrant).

Here, the trial court addressed Appellant's claim as follows:

> In **Steffy**, the Superior Court interpreted the language of [Section 5126] and determined that the intent element of the crime of flight to avoid apprehension is separate and apart from whether the defendant has been convicted or is charged with a felony. **Steffy**, 36 A.3d at 1112. The court made clear that the statute "does not mandate that the defendant have knowledge of the precise grading of the offense for which he is attempting to avoid capture." **Id.** at 1111-12. The court explained, "[i]t is sufficient for the defendant to intentionally elude law enforcement to avoid apprehension, trial or punishment on a charge or conviction. Where that charge or conviction is a felony, the flight to avoid apprehension charge is properly graded as a felony of the third degree." **Id.** at 1112.
>
> [Appellant] complains that the Commonwealth failed to prove that he was aware that there were active warrants filed against him, but provides no legal support that the statute requires such proof. The law does not require a defendant's knowledge of any such warrant to sustain a conviction under Section 5126. **See** 18 Pa.C.S. § 5126(a). Trooper McDermott identified himself as a police officer and told [Appellant] that he had been speeding. [Appellant] provided the officer with a false name. After being told to stay with his vehicle, [Appellant] then left the scene, taking officers on a high-speed chase and then running through the woods on foot. Trooper McDermott testified that during his investigation, he found that [Appellant] had several active warrants for his arrest at the time of the pursuit. This evidence was sufficient to find that [Appellant] fled from Trooper

_____

[5] We may cite to non-precedential decisions of this Court filed after May 1, 2019, for their persuasive value. **See** Pa.R.A.P. 126(b).

McDermott with the intent to avoid apprehension, trial or punishment.

Trial Ct. Op. at 17 (some formatting altered).

Following our review, we find no error in the trial court's conclusion. *See Palmer*, 192 A.3d at 89. Here, at the time Appellant fled from police, he had several outstanding arrest warrants, including one for a felony. *See* N.T. Trial, 9/1/21, at 24. At trial, the Commonwealth presented evidence that Appellant provided a fake name to Trooper McDermott and claimed that he did not have a driver's license because it was suspended. *See id.* at 17. While Trooper McDermott was running Appellant's information through the police database, Appellant proceeded to drive away at a high rate of speed before abandoning the vehicle and fleeing on foot. *See id.* at 18-23.

Appellant contends that the Commonwealth failed to prove that he was aware of the warrant for his arrest. *See* Appellant's Brief at 11, 13. However, this Court rejected that argument in *Thompson*. *See Thompson*, 2019 WL 2121513, at *2. Specifically, the *Thompson* Court concluded that the appellant "fails to provide any legal support for grafting such a requirement onto the statute." *See id*. We conclude the same is true here.

As noted previously, the plain language of Section 5126 does not require proof that a defendant knew that he had an outstanding arrest warrant at the time he fled from police.[6] *See* 18 Pa.C.S. § 5126(a); *see also Steffy*, 36

_____

[6] We recognize that several decisions by this Court involve Section 5126 convictions in which a defendant flees from police after being informed about
*(Footnote Continued Next Page)*

- 10 -

A.3d at 1111-12; *Thompson*, 2019 WL 2121513 at \*2-3.  In any event, the circumstances of Appellant's flight clearly indicate that he intended to evade police in order to avoid apprehension.  As this Court explained in *Thompson*, while a person may run from the police for a number of reasons, it is within the province of the fact-finder to accept or reject these alternate theories, and conclude that the defendant fled to avoid apprehension on his outstanding warrants.  *See Thompson*, 2019 WL 2121513 at \*3; *see also Palmer*, 192 A.3d at 89 (noting that the Commonwealth may sustain its burden of proving every element of the crime using wholly circumstantial evidence).

For these reasons, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that the Commonwealth presented sufficient evidence to establish that Appellant intended to elude law enforcement to avoid apprehension and no relief is due. *See Palmer*, 192 A.3d at 89.  Accordingly, we affirm.

Judgment of sentence affirmed.

_____

an active warrant.  *See e.g. Steffy*, 36 A.3d at 1110; *Commonwealth v. Baker*, 900 EDA 2019, 901 EDA 2019, 902 EDA 2019, 2019 WL 7173300, at \*1 (Pa. Super. filed Dec. 24, 2019) (unpublished mem.); *Commonwealth v. Shroyer*, 18 WDA 2020, 19 WDA 2020, 2020 WL 4814264, at \*1-2 (Pa. Super. filed Aug. 19, 2020) (unpublished mem.).  However, as discussed, the Commonwealth is not required to prove that a defendant knew he had an active warrant in order to sustain a conviction under Section 5126(a). Therefore, to the extent Appellant relies on our prior decisions in support of that proposition, his reliance is misplaced.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/06/2023